ZIMRI A. ENOS *et al.*

*v.*

THE CITY OF SPRINGFIELD.

*Filed at Springfield January 30, 1885.*

| | |
|---|---|
| 113 | 65 |
| 123 | 398 |
| 113 | 65 |
| 126 | 98 |
| 127 | 390 |
| 113 | 65 |
| 130 | 523 |
| 113 | 65 |
| 140 | 164 |
| 143 | 99 |
| 145 | 326 |
| 113 | 65 |
| 150 | 83 |
| 153 | 654 |
| 155 | 395 |
| 113 | 65 |
| 170 | 248 |
| 113 | 65 |
| 177 | 637 |
| 113 | 65 |
| 189 | ¹264 |

1. LOCAL IMPROVEMENTS *in cities and villages—as to the various modes of assessment—the general Incorporation law construed.* The object of the legislature, by sections 116 and 132, chapter 24, article 9, relating to cities and villages, was to provide two modes for making local improvements,—one by special assessments, and the other by special taxation of contiguous property,—and to authorize the corporate authorities of cities and villages to determine by ordinance which mode should be adopted.

2. Section 132, of article 9, chapter 24, of the Revised Statutes of 1874, when considered in connection with the constitution, on the same subject, and the other sections of the same article, is not to receive a literal construction. These various provisions, when so considered, show that two distinct systems of local improvements are provided for, and section 132 is to be understood as requiring only such portions of the statute in regard to special assessments to be.followed as may be consistent with special taxation.

3. Section 139 of the same article, which provides for ascertaining benefits in special assessment proceedings, has no bearing whatever in a proceeding by special taxation.

4. SAME—*special taxation—in proportion to frontage.* In case the council adopts special taxation as the mode in which a street improvement shall be made, it has the power to require that the cost of the same shall be assessed upon the lots abutting upon the streets in proportion to the frontage of the lots upon the same.

5. SAME—*curbing—as part of a street pavement.* It is no valid objection to an ordinance for the paving of a street by special taxation, that it provides also for a curb-stone on each side of the street to be included in the estimate of the expense of the improvement ordered, as such curbing may be regarded as a part of the pavement.

6. SAME—*publication of ordinance for street improvements.* An ordinance of a city for the paving and curbing of a public street, and for levying special taxes on contiguous property to pay the cost of the improvement, is not required to be published. It is only ordinances appropriating money that are required to be published.

7. SAME—*of the costs—as part of the assessment.* The costs of making and levying the assessment of contiguous property by special taxation for the curbing and paving of a street by a city, may properly, under the law, be

taxed against the lots and lands abutting upon such street and included in the special tax.

8. SAME—*practice—demurring to objections to confirmation.* There is no rule of practice which authorizes a demurrer to be filed to objections to the confirmation of an assessment for special taxation upon contiguous property for a local improvement, and if one is filed it can not be treated as an admission of the truth of each objection. It is incumbent on the party filing such objections to prove them.

WRIT OF ERROR to the County Court of Sangamon county; the Hon. JAMES H. MATHENY, Judge, presiding.

Messrs. McCLERNAND & KEYES, and Messrs. PALMERS, ROB-INSON & SHUTT, for the plaintiffs in error:

The city is authorized to make the assessment only under article 9, chapter 24, of the Revised Statutes, and was required to strictly pursue the powers therein given. *Webster* v. *People,* 98 Ill. 343; Cooley on Taxation, 418.

Sections 17 and 18 of that chapter, (Rev. Stat. 1881,) required that the special taxes should be levied, assessed, etc., in the way provided for levying, etc., special assessments, which prohibits the levy of any greater sum on any lot than it shall be benefited. Sec. 24, chap. 24, Rev. Stat. 1881.

The city, by section 6 of the ordinance, ascertained for itself what proportion of the total cost of the improvement would be of benefit to the public, and what on the abutting lots, instead of leaving this to the commissioners.

The demurrer to the objections admits that the improvement and property on Jefferson street are not contiguous to the improvement and property on Washington street, and the same is true in respect to other streets and alleys.

The imposition of the cost according to the frontage of the lots is unjust, unreasonable and oppressive, and as to some lots amounts to confiscation. The ordinance must be reasonable, and not unfair or oppressive. *Craw* v. *Tolono,* 96 Ill. 259.

The paving of the streets, and fencing the same with a curbing stone for the sidewalks on either side thereof, are

separate and distinct improvements, and can not be united in one proceeding. *Weckler* v. *Chicago,* 61 Ill. 142.

No power is conferred upon cities and villages to make local improvements by special taxation, and assess the cost of the same on the lots abutting the street in proportion to their frontage, except by the act of 1875, and that is confined to sidewalks. Taxing by frontage to pave a street is illegal. Cooley on Taxation, 453.

The plaintiffs have been taxed with the costs of levying, assessing and collecting the assessment, which we think is error. *Trustees* v. *Chicago,* 12 Ill. 403; *Morris* v. *Chicago,* 11 id. 650.

The ordinance under which the assessments were made was not published. All ordinances making any appropriation must be published. Rev. Stat. 1878, chap. 24, art. 5, sec. 64.

The defendant's general demurrer admits in law the truth of this fact, and of all other facts well pleaded. 1 Chitty's Pleading, (12th Am. ed.) 661, 662; *Compher* v. *People,* 12 Ill. 290; *Nespel* v. *Laparde,* 74 id. 376; *People* v. *Holden,* 82 id. 93.

The charter treats all special assessments of property for any city improvement as *per se* an appropriation. Rev. Stat. 1878, chap. 24, art. 7, secs. 98, 99.

Messrs. STUART, EDWARDS & BROWN, for the defendant in error:

Special taxation is based upon the supposed benefit to contiguous property, and differs from special assessments only in the mode of ascertaining the benefits. *White* v. *People,* 94 Ill. 607; *Craw* v. *Tolono,* 96 id. 256.

The statute must be construed with reference to the constitution, and so much of the provisions of section 17, chapter 24, of the Revised Statutes, as provides that special taxation "shall be levied," etc., "in the way provided in the sections of this act providing for the mode of making, levying," etc., of "special assessments," is to be construed as to embrace

so much of such provisions relating to special assessments as is consistent with the exercise of the grant of power to provide for special taxation.

The practice does not justify the filing of a demurrer to objections, and the demurrer, if appropriate, would admit only such facts as are well pleaded. All the objections resolve themselves into one—that the special tax can not be laid in proportion to frontage.

The publication of the ordinance was unnecessary. *Mix* v. *People,* 106 Ill. 431; *Port Byron* v. *Blount,* 97 id. 65.

In relation to the uniting more than one improvement, *Weckler* v. *Chicago,* 61 Ill. 145, has no application.

The paving and the curbing constitute but one improvement. *Ricketts* v. *Village of Hyde Park,* 85 Ill. 112.

Upon general principles, if the city council had power to select the mode of frontage as a basis for the special taxation, then the machinery which they use to carry out this object is part of the mode, and over it this court has no jurisdiction.

The right to confer this power by general law, and the fact that it has been so conferred by the ninth article of chapter 24, has been expressly decided by this court. *Falch* v. *People,* 99 Ill. 140. See, also, *Lake* v. *City of Decatur,* 91 Ill. 596; *People* v. *Cooper,* 83 id. 585.

The power of the city to levy this tax according to frontage is settled. *White* v. *People,* 94 Ill. 607; *Craw* v. *Tolono,* 96 id. 256.

It is insisted that these decisions are only applicable in case of sidewalk improvements. The power is given in relation to any local improvement, including sidewalks, with a proviso as to sidewalks, giving the owner fifteen days to build or renew the sidewalk, and thus avoid the assessment. (Sec. 134, chap. 24, Rev. Stat.) The sidewalk is only a part of the street. *Gridley* v. *Bloomington,* 88 Ill. 556.

The right to include costs in the assessment is specially allowed by section 135, chapter 24, of the Revised Statutes.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This is a writ of error to reverse a judgment of the county court of Sangamon county, confirming a special tax assessed by three commissioners, for the purpose of improving certain streets in Springfield. Upon the return of the assessment roll, plaintiffs in error appeared in the county court and filed numerous objections, all of which were overruled.

It is impossible to tell from the abstract filed in this case, the nature of the action or the character of the judgment,— indeed, it contains nothing from which an intelligent conclusion can be reached as to a proper decision of the case. Upon an examination, however, of the record, it appears that the city council of Springfield, on the 23d day of April, 1883, passed an ordinance providing that certain streets in the city should be paved; that the cost of the improvement, except the street and alley intersections and crossings, should be paid by special taxation upon property touching or abutting on either side of said streets, in proportion to the frontage thereof upon the streets. The city council, by the ordinance, appointed three commissioners to make an estimate of the cost of the improvement. These commissioners, on the 7th day of May, 1883, made a report of the estimate of the cost of the improvement, which was duly approved by the city council. A petition was then filed in the county court, which contained a copy of the ordinance, and also a copy of the report of the commissioners showing the cost of the proposed improvement, and prayed that the cost of the improvement might be assessed in the manner provided by law. The court, upon an examination of the petition, ordinance and report of the estimated cost, appointed three commissioners to assess the cost of the improvement by special taxation. The commissioners, under the order, proceeded and assessed a special tax, equal in amount to the cost of the improvement, upon the lots and lands abutting on either side of the streets, in

proportion to the frontage of said lots and lands upon the streets.    The assessment roll was returned to the court, and upon the hearing all the objections interposed were overruled, and the assessment as made and returned was confirmed.

Numerous objections were filed in the county court to the proceeding, but we do not understand that all of them are relied upon here,—indeed, but a few of them have been urged on the argument, and they will be considered.

Section 132, chapter 24, of article 9, of the Revised Statutes of 1874, page 234, provides: "When said ordinance under which said local improvement shall be ordered, shall provide that such improvement shall be made by special taxation of contiguous property, the same shall be levied, assessed and collected in the way provided in the sections of this act providing for the mode of making, levying, assessing and collecting special assessments." Now, it is urged that the assessment was not made in conformity with the mode of making, levying and assessing special assessments, and hence its illegality. Section 116 of the same statute provides: "That the corporate authorities of cities and villages are hereby vested with power to make local improvements by special assessment, or by special taxation, or both, of contiguous property, or general taxation, or otherwise, as they shall by ordinance prescribe." It is plain if the mode of procedure is to be the same where the city proceeds by special taxation as it is where the city authorities proceed by special assessment, that part of the statute which confers the power to resort to special taxation is rendered nugatory, and can have no force or effect whatever in the statute. This certainly was never contemplated. But the object of the legislature was to provide two modes,—one by special assessment, the other by special taxation of contiguous property,— and the corporate authorities of the city or village might determine by ordinance which mode should be adopted. The language of section 132 is not to receive a literal construction,

but in determining its object and meaning it must be considered in connection with the constitution, which authorizes the General Assembly to vest corporate authorities of cities, towns and villages with power to make local improvements by special assessments or by special taxation of contiguous property, and also in connection with the other sections of article 9, of chapter 24; and when so considered, in view of the fact that the two distinct systems have been provided for, it is manifest that section 132 is to be understood as requiring only such portions of the statute in regard to special assessments to be followed as may be consistent with a proper exercise of the power of special taxation.

Section 139, which provides for ascertaining benefits on special assessment proceedings, has no bearing whatever in a proceeding by special taxation. "Special taxation, as spoken of in the constitution, is based upon the supposed benefit to the contiguous property, and differs from special assessment only in the mode of ascertaining the benefits. In special taxation the imposition of the tax is of itself a determination that the benefits to the contiguous property will be as great as the burden imposed, while in the case of special assessments the property to be benefited must be ascertained by a careful investigation, and the burdens distributed according to carefully ascertained proportion, in which each part will be beneficially affected." *Craw* v. *Village of Tolono*, 96 Ill. 256. See, also, *White* v. *The People*, 94 Ill. 607, where it is said: "The objection that the special tax here exceeds the benefits to the lot, implies that the only mode of making the improvement is by special assessment, whereas the broad power is given under the constitution to make it either by special assessment, or by special taxation of contiguous property, or otherwise. * * * This proceeding is in the special taxation of contiguous property; and in the adoption of that mode there is no requirement of benefits received, and no respect thereto further than may be had by the city

council in determining upon which particular one of the sev-. eral modes of special taxation of contiguous property open to them shall be resorted to." Here the ordinance was passed providing for the improvement, and that it should be made by special taxation, and, as required by section 135, three persons were appointed to make an estimate of the cost of the improvement. Upon receiving and approving the report, the city council, as required by section 136, ordered a petition to be filed in the county court that the cost of the improvement might be assessed. The petition was filed as required by section 137, and the court appointed three commissioners, who made the assessment, and returned an assessment roll, which, so far as we are able to perceive, conforms to the requirements of the law.

The third section of the ordinance provided, in substance, that a stone curbing should be provided on each side of the pavement laid on the street, and it is contended that the paving of the streets and furnishing the stone curbing are separate and distinct improvements, which can not be united in one proceeding, and is condemned by *Weckler* v. *City of Chicago,* 61 Ill. 145. We do not think the case cited has any bearing here. It is manifest that the paving and curbing constitute but one improvement. The curbing is placed at the side of the pavement for its support, and may be regarded as a part of the pavement.

Objection is also made to the proceedings because the cost of the improvement, under the terms of the ordinance, was assessed upon the lots abutting upon the streets in proportion to the frontage of the lots upon the streets. Section 9, of article 9, of our constitution, provides: "The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessments, or by special taxation of contiguous property, or otherwise." In pursuance of this provision of the constitution the legislature adopted article 9, of chapter 24,

the first section of which declares: "That the corporate authorities of cities and villages are hereby vested with power to make local improvements by special assessment, or by special taxation, or both, of contiguous property, or general taxation, or otherwise, as they shall, by ordinance, prescribe." The constitution and the section of the statute are silent on the point as to manner of the assessment,—whether it shall be in proportion of the frontage of the lot, or otherwise. But power is conferred on the city to make the assessment, and it is a matter within the discretion of the corporate authorities to determine for themselves, and any mode they may adopt to carry out the power conferred will be sustained, so long as they do not violate the constitution or the statute. In *White* v. *The People*, 94 Ill. 607, where a special tax was assessed according to frontage, it is said: "Whether or not the special tax exceeds the actual benefit to the lot is not material. It may be supposed to be based on a presumed equivalent. The city council have determined the frontage to be the proper measure of probable benefits. That is generally considered as a very reasonable measure of benefits in the case of such an improvement, and if it does not in fact, in the present case, represent the actual benefits, it is enough that the city council have deemed it the proper rule to apply." It is true that this decision was made under a proceeding which arose under the act of 1875, in relation to sidewalks, which expressly authorizes an assessment per frontage, but we do not regard that as important.

Complaint is also made that plaintiffs in error have been taxed with the costs of making and levying the assessment. This is authorized by section 135 of the act under which the proceedings were had.

Another objection interposed to the proceedings is, that the ordinance under which the assessment was made was not published. The charter of the city requires all ordinances appropriating money to be published. In *Mix* v. *The People*,

106 Ill. 426, we held that an ordinance levying the city tax was not required to be published, but only ordinances making appropriations of money. This case is conclusive of the question raised.

To the various objections which were filed to the assessment a demurrer was interposed and sustained, and it has been taken for granted in the argument that the demurrer admitted the truth of each objection so filed. We are aware of no statute or well settled practice which authorizes a demurrer to be filed in such a case. Where objections are filed in such a case it is incumbent on the party filing them to sustain them by proof, unless they appear on the record. We are not inclined to sustain a practice which will admit the truth of every objection which may be filed, however frivolous, although a demurrer may be interposed to the objection.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE WALKER, dissenting:

There is perhaps no more indefinite term in the English language than the words "local improvements." I can imagine no improvement, public or private, that is not in some sense local. It is made in a particular locality, and is therefore local. But the term can not have been used in that sense in the ninth section of article 9 of the constitution. It would be unreasonable to hold it was used in this broad and unrestricted sense, and would be liable to great if not ruinous abuse. Had the constitution simply created the legislature, and vested it, as was done by the fourth article, with legislative power, it could have levied or authorized the levy of taxes to any extent, for any purpose, and in any manner it might choose. The whole of that article is a limitation on the exercise of the taxing power. It is in all liberal and constitutional governments a legislative function, and our constitution limits or restrains the manner of its exercise.

That instrument limits the power to the value of the property taxed, and not only so, but imperatively demands that it shall be imposed by a uniform rate, upon an ascertained value. It also provides for uniformity of burthen when taxes are imposed on business, professions, occupations, franchises, persons and corporations. It leaves the legislature free to adopt such manner as it may choose in imposing such taxes, but requires in terms that it shall be by general law, and shall be uniform as to the class upon which it shall operate. It is also provided that "the General Assembly shall have no power to release or discharge any county, city, township, town or district whatever, or the inhabitants thereof, or the property therein, from their or its proportionate share of taxes to be levied for State purposes; nor shall commutation for such taxes be authorized in any form whatever." This, like the previous provisions, was intended to enforce equality and uniformity of burthen upon the tax-payers. In the same spirit and for the same purpose it is provided by the ninth and tenth sections of that article, that municipal taxes shall be uniform as to persons and property within the corporate limits.

It is thus seen that the great central and controlling idea of the constitution is, in levying taxes, that there shall be equality and uniformity in their imposition and burthen. That purpose pervades the entire article, and is too plain to be misunderstood, and I presume none will question its truth. This being true, every rule of construction requires that it should be kept in view in construing every clause or provision of that article. That principle is the touchstone by which every clause of the article must be tried, and to which the various provisions should conform.

What, then, in the constitutional sense, is a local improvement? We have seen that it is not such an improvement because it is made at a particular place. Improvements are private or public, and public improvements may be divided

into such as affect or benefit the general public, and local, such as affect or benefit the local public or a small number of persons of the local public. An improvement that is or may be used by the entire public, or is designed to and does accommodate the whole community, is a public improvement that may be denominated as general, as contradistinguished from a local improvement. A local improvement, in the sense of the constitution, is one in which there is no intention to accommodate or benefit the general public, but to benefit a few individuals of the local public. Such an improvement is not private, but is *quasi* public.

The question then arises, was the improvement of these streets, by laying cedar-block pavements therein, and costly dressed stone sidewalks, a local improvement? I think not. The streets are public highways, constructed and maintained for the use of the general public,—for all citizens, strangers or aliens, who may desire to use or travel over them. This is the primary purpose of their construction. They are open and free to all persons, and I am at a loss to imagine any improvement more general and public than common highways in counties and streets in cities. They do not have a single element of private or local use beyond all other public improvements conceded by all to be general in their character.

Again, the term "local improvements," being uncertain in its meaning and as to what it shall be applied, and as it pertains to the exercise of legislative power to levy or authorize to be levied a tax, it is a function of the legislature to construe its meaning, and apply the power to such improvements as it shall declare local. In the exercise of this power the General Assembly has declared the making or repairing sidewalks on streets is a local improvement, within the meaning of that section of the constitution, but has not declared that the paving of streets or other public highways is a local improvement. The court, in such cases as this, has no power to say that such improvements are local, and that the power

may be exercised, under the constitution, without legislation. The first clause of section 9, of article 9, provides that the General Assembly may vest the power in the corporations named, to make local improvements by special taxation of contiguous property. This clause does not invest such bodies with the power, but authorizes the legislature to confer the power. These bodies can not so act until so empowered, and no power has been conferred to pave streets or highways, and the attempt to exercise the power is unauthorized, and the action is void, and the city is not liable. The constitution has not authorized the courts to say what are local improvements, nor to confer the power on municipalities. It provides that the General Assembly may confer the power, not that such bodies may exercise the power. The General Assembly, in conferring the power to so make sidewalks, withheld the power to make or pave streets in that manner. To hold that the term "sidewalks" embraces streets, would be a perversion of terms and violation of every rule of interpretation. To hold that the law empowers cities, towns and villages to so make streets, is to enact another provision to embrace streets. It is not construction, but it is enactment, and an encroachment upon legislative functions.

Nor can there be the slightest pretence that the power to make local improvements by special taxation is conferred by the seventh clause of section 62 of the general law for the incorporation of cities, towns and villages. It authorizes such municipalities "to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks and public grounds, and vacate the same." This provision manifestly empowers these bodies to make such improvements in the usual manner, and not by resort to extraordinary means or by the employment of extraordinary powers. It simply confers the usual corporate powers, but not by the arbitrary and unjust burthen of taxing the few for the benefit of the many,—provisions to prevent

which pervade the entire ninth article of the constitution. If streets may be paved in this manner, then all the enumerated improvements of this clause may be for the same reason and by the same construction embraced. If it confers power to do one thing in that mode, it does for all the enumerated objects. No person can, with the slightest pretence of reason, claim that all these objects may be so constructed or repaired. The only power ever conferred by the General Assembly, so far as I can find, to make such improvements, is by the act of April 15, 1875. (Sess. Laws, p. 63.) That act provides that sidewalks may be constructed by special taxation on contiguous property. The act provides in detail for levying and collecting the tax and making the improvement, but the paving of streets is not named or authorized in that manner. The fact that streets are not provided for, is strong evidence that the General Assembly did not intend, to confer the power to improve streets in that mode; and when it is remembered that, under the constitution, cities, etc., can not exercise the power until it is conferred by the General Assembly, it is apparent the city was destitute of all power to adopt and enforce this ordinance, and it and all liability under it must fail.

There is another view of the case, even if the act of 1875 did authorize the ordinance, that is equally fatal to the proceeding. There are in the act several modes of levying the tax on contiguous property, for making local improvements. One is, to apportion the cost on contiguous property according to its assessed value for taxation, previously made. This would be in harmony with the central and controlling purpose of the framers of the ninth section of the ninth article. Another mode provided is, to assess the cost of the improvement, or any portion thereof, on the lot in front of which the improvement is made, or a *pro rata* portion thereof. And still another way is, to tax the cost on the adjoining lots according to their frontage. These last modes manifestly are opposed

to the spirit, if not the letter, of that entire article of the fundamental law. In modern times the word "taxation" has come to mean, unless otherwise restricted, a certain rate or per cent levied on the value of property ascertained for the purpose of its imposition. To hold that a tax may be levied on property without regard to value, is arbitrary, unequal, and highly unjust. If a tax may be thus imposed for paving streets, it may, for the same reason and on the same principle, be imposed on adjacent property to build a ward school house, a city prison, a market house, a fire engine house, bridges, and other structures, no matter how costly or how ruinous to property holders. On the same reasoning the city might construct a sewer through the entire length of the city, costing hundreds of thousands of dollars, and impose the burthen on contiguous property, to its entire confiscation. All these improvements are less general in their character than the streets of a city, and partake more of the nature of local improvements than streets.

In the case at bar, from the extent of the improvements we have a right to suppose the lots in front of which the pavement is made are of unequal value. Doubtless, some of the same frontage and dimensions, owing to their proximity to the business portion of the city, their improvement, location, and other causes, are worth double, treble or quadruple that of others. This being true, one owner will be compelled to pay double, treble or quadruple more than another on the value of his property, for the construction of an improvement that is not local, in the constitutional sense, but is in every sense general and public. I, for these and other reasons that might be specified, am unable to concur in the opinion of the majority of the court.