HERVEY LIGHTNER

|80:35  LRA

v.

THE CITY OF PEORIA.

*Filed at Ottawa March 31, 1894.*

1. SPECIAL ASSESSMENT—SPECIAL TAXATION—*difference*. Municipal authorities may require the special benefits accruing from a local public improvement to be assessed upon the property thus specially benefited, or may impose the same by way of special taxation, the two modes differing only in the manner of ascertaining the benefits.

2. SAME—*when authorized*. Special assessments and special taxes imposed for local improvements, unlike general taxes, are based upon benefits to the property against which they are assessed and levied, arising from its increased value in consequence of the improvement. They are authorized only when the local improvement, either actually or presumptively, benefits the particular property in an amount equal to the burden imposed. The liability for such tax is confined to the property benefited.

3. SPECIAL TAXATION—*uniformity—taxing district*. The effect of an ordinance providing for a local improvement by special taxation is to create a taxing district composed of the property contiguous to the improvement. It lies at the foundation of the right to impose the taxes that they should be levied for a public purpose, and laid according to some fixed rule of apportionment, so that practical uniformity may be arrived at in their imposition upon persons or property within the taxing district, whether that district be the State, county, etc., or a district thereof created by ordinance for local improvement.

4. SAME—*unequal benefits—dividing the improvement*. Where an improvement of an entire street benefits the contiguous property, upon different parts of it, in unequal proportions, the city council, in the exercise of their discretion, may divide the improvement, so as to secure practical uniformity in the distribution of the burden. The tax should be so levied, and such system of apportionment adopted, that the property subject to the tax will bear its just proportion of the burden in proportion to the benefits arising from the improvement.

5. And where a difference exists, not only in the nature, extent and cost of the improvement, but also in the benefits accruing to contiguous property upon different parts of the same improvement, the tax should be so levied that the burden will be borne in proportion to the benefits secured. But a mere arbitrary breaking up of the improve-

ment into sections, having a tendency to produce unequal distribution of the tax, can not be sustained.

6. SAME—*equal benefits—how determined.* The imposition of a special tax is of itself a determination by the legislative authority of the city that the benefit to contiguous property will be as great as the burdens imposed. By the statute, cities and villages are expressly authorized to determine that the improvement shall be made and paid for by special taxation of contiguous property, and in the absence of an abuse of their discretion the courts can not interfere.

7. SAME—*according to frontage.* After municipal authorities have determined upon the width, character and kind of improvement to be made, and that it shall be paid for by special taxation according to frontage, it is their duty to so levy it as that equality in the imposition of the burden, so far as practicable, should be attained.

8. SAME—*collecting tax in installments.* An assessment of a special tax will not be rendered void because the ordinance provides for the tax to be collected in installments, as it is provided special assessments for local improvement may be paid by the act of the legislature in force July 1, 1891. It is competent for city authorities to provide, by ordinance, for the payment of special taxes by installments.

9. SAME—*taxing district—what it comprises.* A taxing district created by ordinance, for the purpose of making a local improvement by special taxation, comprises all the property contiguous to the improvement subject to special taxation for making the same. A public street or alley is not contiguous property, within the sense of the statute, and therefore is not subject to special taxation.

10. SAME—*taxation of streets.* The fee of the streets of a city being vested in the city for the use of the general public, they are not the subject of taxation, and no sale of the streets can be made to satisfy a special tax, if assessed on them.

11. SAME—*for paving a street—exclusion of street railway.* In a proceeding by a city to improve and pave a street by special taxation, the exclusion of the rights of way held by street railway companies from the pavement, etc., will not invalidate the ordinance.

12. SAME—*taxation of street railway—according to frontage.* It can not be said that a railway right of way has a frontage upon the street, as that term is applied to abutting property, and while it is to be treated as contiguous property, and be required to contribute to the burden of local improvements, some apportionment of the tax must be adopted other than by frontage.

13. STREET RAILWAY—*paving street—discretion of municipal authorities.* Whether a street railway company shall pay for paving between its tracks, as is sometimes done, or more or less, or whether the levy

shall be of a share or portion of the whole cost, and if so, how much, rests in the discretion of the municipal authorities, to be reasonably exercised. In the absence of anything showing to the contrary, it must be presumed that the municipal authorities have exercised their discretion reasonably, and required of the railway companies payment of their just and equal proportion of the cost of the local improvement.

APPEAL from the County Court of Peoria county; the Hon. SAMUEL D. WEAD, Judge, presiding.

At the May term, 1892, of the county court of Peoria county, upon petition of the city of Peoria for confirmation of a special assessment for the improvement of that part of Main street, in said city, lying between the upper line of Water street and the upper line of Bluff street, a decree was entered confirming such assessment. It appears that on February 2, 1892, the city council of Peoria passed an ordinance for the curbing and paving of that part of Main street, particularly specifying the location, nature, character and description of the improvement, and providing that the cost thereof, including street and alley intersections, be paid by special taxation upon contiguous property, according to frontage; that said assessment be collected by installments, in accordance with the act of 1891, amendatory of the Cities and Villages act, approved June 15, 1891, etc., and appointing commissioners to ascertain and report the cost of such improvement. The commissioners appointed made report thereof, which was approved by the city council, and the petition to the county court ordered filed. In the county court commissioners were appointed to levy the reported cost of the improvement upon contiguous property, who, after taking the oath prescribed by the statute, duly made and returned an assessment roll. Appellant and others filed objections to the confirmation of the assessment, which were overruled, and an order confirming the assessment entered, from which objectors appeal. Other facts necessary to an understanding of the case are stated in the opinion.

Messrs. JACK & TICHENOR, for the appellant.

Mr. JOHN W. CULBERTSON, City Attorney, and Mr. W. T. WHITING, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This is an appeal from the judgment of the county court of Peoria county, confirming the assessment of special taxes upon contiguous property, levied and assessed for the curbing and paving of Main street, in the city of Peoria, from the upper line of Water street to the upper line of Bluff street, in said city. Main street is one hundred feet wide. For a portion of the distance ordered improved by this ordinance, the center of the street is occupied by double street railway tracks, for another portion, by a single street railway track, while still other parts are not so occupied, and at certain street intersections street railway tracks cross Main street. By the ordinance the rights of way of the several railway companies on and crossing Main street are expressly excepted out of the improvement required by the ordinance to be made, the cost whereof is to be assessed upon contiguous property, and the assessment, it is conceded, was so made. It is stated, and not controverted, that by the ordinances of the city granting the franchises to the railway companies, they are required to pave, etc., their rights of way.

That the right of way of the railways in the street proposed to be improved is contiguous property, and falls within the designation of property that may be specially taxed, was held in *Kuehner* v. *Freeport*, 143 Ill. 92. In this case it may fairly be presumed that the street railways were required to pave their rights of way. The exclusion of such rights of way from the pavement, etc., to be paid for by special taxation of contiguous lots, blocks and tracts of land, has been so frequently held not to invalidate the ordinance that it can no longer be considered an open question. *Enos* v. *Springfield*, 113 Ill.

65; *Wilbur* v. *Springfield*, 123 id. 395; *Green et al.* v. *Springfield*, 130 id. 515; *Kuehner* v. *Freeport, supra.*

It can not be said that the railway right of way has a frontage upon the street, as that term is applied to abutting property, and while it is to be treated as contiguous property, and be required to contribute to the burthen of local improvements, some apportionment of the tax upon it must be adopted other than by frontage. In *Kuehner* v. *Freeport, supra,* it was said: "Whether the railway shall pay for paving between its tracks, as is sometimes done, or more or less, or whether the levy shall be of a share or portion of the whole cost, and if so, how much, rests in the discretion of the municipal authorities, to be reasonably exercised." By reference to the cases cited it will be seen that the levy of a special tax to pay for the improvement, not included within the right of way, and excluding it from the levy upon abutting property, has uniformly been sustained. In the absence of anything showing to the contrary, it must be presumed that the municipal authority has exercised its discretion reasonably, and required of the railway companies payment of their just and equal proportion of the cost of the local improvement.

It is objected that the assessment is void, for the reason that the ordinance provides for the tax to be collected in installments, as it is provided special assessments for local improvements may be paid, by the act of the legislature in force July 1, 1891, (3 Starr & Curtis, par. 170 a, p. 208,) that act applying to special assessments, as it is said, and not to special taxes levied for local improvements. The act of 1872, entitled "An act to provide for the incorporation of cities and villages," invests corporate authorities of cities and villages with power to make local improvements by special assessment or special taxation. Section 2, article 9, requires that the ordinance providing for making the improvement shall prescribe whether the same shall be made by special assessment or by special taxation of contiguous property, or general taxa-

tion, or both. Section 17 provides, that when the ordinance prescribes that the improvement shall be made by special taxation of contiguous property, "the same shall be levied, assessed and collected in the way provided in the sections of this act providing for the mode of making, levying, assessing and collecting special assessments." By an act of the legislature approved and in force April 24, 1887, (Laws of 1887, p. 104,) article 9 of the Cities and Villages act of 1872 was amended by adding thereto certain sections, being from 55 to 67, inclusive. Section 55 provided for the division of special assessments for local improvements in cities and villages into installments, and prescribing the mode for such division and payment of the installments. The other sections are unimportant to be considered here. Thereby section 55, and the subsequent sections, became incorporated into and formed part of said article 9, prescribing "the mode of making, levying, assessing and collecting special assessments." Thereafter the mode of levying, assessing, and collecting special assessments, if so prescribed in the ordinance, might be by dividing them into installments, and payable as provided in said section 55. The act of 1891 is an amendment of said section 55 of article 9, as amended in 1887, and July 1, 1891, became a part of said article 9, providing for the mode of making, levying and collecting special assessments for local improvements, by their division into installments. By virtue of the provisions of section 17, before quoted, said act became applicable to special taxation of contiguous property for local improvements. The same rule has been announced in *English* v. *City of Danville, post*, p. 92. We are of opinion that it was competent for the municipal authorities to provide by ordinance, as they have done, for the payment of the special taxes assessed, in installments.

The ordinance provides, in the improvement contemplated, that the curbing on each side of the street shall be set twenty feet from the lot line, curving at street intersections out to the

line of the street, thereby, except at intersections of streets, requiring a roadway to be paved sixty feet wide, less railway rights of way, and at such intersections extending the pavement the full width of Main street, or one hundred feet. It is objected that the city was without power to assess the whole cost of the improvement upon the contiguous property, but should have assessed a *pro rata* share of the tax upon the streets and alleys intersecting Main street, treating such streets and alleys as contiguous property. The contention is without merit. By the ordinance a taxing district was created, in which the benefits flowing from the proposed improvement were found by the legislative authority of the city to diffuse themselves in equal proportions upon the property within the district liable to taxation. The district comprised all of the property contiguous to the improvement, subject to special taxation for making the same. (*Davis* v. *Litchfield*, 145 Ill. 313, and authorities cited.) Within the district thus created it was competent for the city authorities to assess a special tax to defray the cost of such improvement, and as said in *Craw* v. *Village of Tolono*, 96 Ill. 256, "the imposition of the tax is, of itself," (in the absence of a clear abuse of the legislative discretion of the municipality,—*Bloomington* v. *Chicago and Alton Railroad Co.* 134 Ill. 452,) "a determination that the benefits to the contiguous property will be as great as the burden imposed." (*White* v. *The People*, 94 Ill. 607; *Enos* v. *Springfield, supra; Davis* v. *Litchfield, supra.*) Special assessments and special taxes imposed for local improvements, unlike general taxes, are based upon benefits to the property against and upon which they are assessed and levied, arising from its increased value in consequence of the improvement. They proceed upon the basis of benefits to the particular property, and are authorized only when the local improvement, either actually or presumptively, benefits the particular property in an amount equal to the burden imposed. The levy being upon the basis of benefits accruing to the specific prop-

erty, it becomes a charge only upon and against it, and lia-
bility for the tax is confined to that particular property.
*Craw* v. *Village of Tolono, supra; McLean County* v. *City of
Bloomington,* 106 Ill. 209.

The fee of the streets of the city is vested in the municipal-
ity in trust for the use of the general public, and they are not
therefore the subject of taxation. (*McLean County* v. *City of
Bloomington, supra.*) No sale of the streets could be made to
satisfy the special tax, if assessed upon them, (*Taylor* v. *The
People ex rel.* 66 Ill. 322,) and it follows, necessarily, that they
are not contiguous property, within the meaning of the stat-
ute, and subject to local taxation. Again, as already seen,
special taxation and special assessment are based upon the
idea, real or presumptive, that the property assessed is in-
creased in its market value by reason of the improvement.
Without elaborating, it is apparent that there can be no such
increased value to the streets of the city. They are avenues
and ways, established and maintained for the convenience
and benefit of the property holders and the public, and while
they may increase the value of property in the locality or
throughout the municipality, they are not the subject of prop-
erty in the ordinary sense, and are not, in themselves, in-
creased in value by their own betterment.

It is, however, urged, that it was unjust to the contiguous
lot owners to assess the entire cost of the improvement, in-
cluding the intersections, upon the contiguous property. Ad-
dressed to the city council, this position would seem to be
entitled to grave consideration. As already seen, the impo-
sition of the tax is, of itself, a determination by the leglisla-
tive authority of the city that the benefits to the contiguous
property will be as great as the burden imposed. There is
necessarily vested in the city council a large discretion in
determining the extent of the improvement, what shall be in-
cluded within it, and the nature and character of it. By the
statute they are expressly authorized to determine that the

improvement shall be made and paid for by special taxation of contiguous property, and unless there has been a clear abuse of the power and discretion conferred upon the city council, courts are powerless to interfere. There is nothing in the record showing, or tending to show, an abuse of discretion on the part of the city council. True, they require the expense of paving the street intersections to be paid by special taxation of the contiguous property; but the paving of the intersections is necessary to the continuity of the improvement and to the benefit derived therefrom by the contiguous property, and if, as must be presumed, the benefit to the contiguous property is equal to the cost of the entire improvement, including the street intersections, there is no impropriety or injustice in the imposition of the tax. Ordinarily, perhaps, the paving of the street intersections, presumably being *pro tanto* an improvement of intersecting streets, has been paid for out of the general revenues of the municipality. But such intersecting streets may not require paving, or if. requiring it may never be paved, and while there may be resulting benefits from the improvement, diffused, to the same extent, to sub-adjacent property, the special benefit contemplated and authorizing the special tax will accrue to the property contiguous to the street improved. It follows, necessarily, that the municipal authorities may require the special benefits accruing from the improvement to be assessed upon the property thus specially benefited, or may impose the same by way of special taxation, the two modes differing only in the manner of ascertaining the benefits. *Craw* v. *Tolono,* and cases *supra.*

Upon the hearing of objections, appellants offered in evidence four additional ordinances, passed at the same time as the one providing for the improvement under consideration, and the proceedings thereunder, by which it was shown that Main street was to be curbed and paved from the upper line of Water street to Bradley street, at the extreme western limit

of the city, a distance of over a mile. The various ordinances offered showed the creation of five separate taxing districts, and it is insisted that the curbing and paving were a single improvement, and that it was not competent for the city to divide it up in the manner proposed. By the ordinance, in this case, Main street was to be improved from the upper line of Water street to the upper line of Bluff street, and without entering into the nature and character of the improvement farther than has been already done, it was shown that the cost of the improvement per front foot, between said points, was $9.20. The next section of the improvement provided for by the first ordinance introduced in evidence by appellants, was from the upper line of Bluff street to the upper line of Crescent avenue, and the cost thereof was shown to be $7.80 per front foot. The next division was from the upper line of Crescent avenue to the lower line of North street. In this section the roadway of Main street was to be improved of the width of forty feet, and the cost per front foot was shown to be $3.45. The next section or division of the street was from the lower line of North street to the west side of Elizabeth street, and the remaining division was from the west side of Elizabeth street to Bradley street, the cost of the former being $3.85 per front foot and the latter $5.37 per front foot, the roadway through the last two sections being of the width of thirty-six feet, and there being a variation in the depth of excavation beneath the surface and the thickness of the concrete base upon which the brick pavement was to be laid.

As we have already seen, the extent of the improvement, and the nature and character of it, necessarily rest within the legislative discretion of the city council. (*Davis* v. *Litchfield, supra; Louisville and Nashville Railroad Co.* v. *East St. Louis,* 134 Ill. 663; Dillon on Mun. Corp. secs. 58, 59.) The effect of an ordinance providing for a local improvement by special taxation is to create a taxing district, composed of the property contiguous to the improvement. It lays at the founda-

tion of the right to impose the taxes, that they should be levied for a public purpose, and laid according to some fixed rule of apportionment, so that practical uniformity may be arrived at in their imposition upon persons or property within the taxing district, whether that district be the State, county, municipality, or a district thereof created by ordinance for local improvement. (1 Desty on Taxation, 29; Dillon on Mun. Corp. 587.) The municipal authorities having determined upon the width, character and kind of improvement to be made, and that the same should be paid for by special taxation, according to frontage, it was their duty to so levy it as that equality in the imposition of the burden, as far as practicable, should be attained. "Equality," says Mr. Desty, "as far as practicable, and security of property against irresponsible power, are principles which underlie the power of taxation, as declared ends and principles of fundamental laws."

We have repeatedly held, that where the improvement of even a number of streets would diffuse their benefits with practical equality on property contiguous to each, they may be combined in a single scheme of improvement, and no reason is apparent why, where an improvement of an entire street benefits the contiguous property, upon different parts of it, in unequal proportions, the city council, in the exercise of their discretion, may not divide the improvement, so as to secure practical uniformity in the distribution of the burden. Absolute equality in the imposition of the tax is not attainable, but in all cases the tax should be so levied, and such system of apportionment adopted, that the property subject to the tax, as far as practicable, will bear its just proportion of the burthen in proportion to the benefits arising from the improvement; and where a difference exists, not only in the nature, extent and cost of the improvement, but also in the benefits accruing to contiguous property upon different parts of the same improvement, the very plainest principles of justice would seem to require that the tax be so levied that the bur-

den will be borne in proportion to the benefits received. It requires no evidence or argument to show that an improvement of a street through the business center of the city, requiring greater width and solidity of pavement, would bear little proportion, in the benefits conferred, to the benefits accruing to residence property situated upon the outskirts of the city, and it would undoubtedly be true that the disproportion would arise proportionately as the improvement receded from the business center. It is manifest that in this case, unlike *Davis* v. *Litchfield, supra,* where there was an attempted arbitrary imposition of the cost of the improvement in front of each lot contiguous to the street, there was here an endeavor to so organize the taxing district that there should be an equal distribution of the tax upon property in different sections of the city, in proportion to the benefits accruing. This, we think, was within the legislative discretion of the city council, and if made by them in the reasonable exercise of such discretion their action is final. (Cooley on Taxation, 110, *et seq.;* *Davis* v. *Litchfield, supra.*) This record fails to show any such abuse in the exercise of the power conferred as to authorize the court to declare the ordinances void. Undoubtedly a mere arbitrary breaking up of the improvement into sections, having a tendency to produce unequal distribution of the tax, could not be sustained. But no such case is here shown.

Other objections are made, which we have carefully considered, but which, in view of the legislative discretion vested in the city council in determining the nature, character, extent and description of the improvement, will require no special consideration.

Finding no substantial error in this record, the judgment of the county court will be affirmed.

*Judgment affirmed.*