134 451
149 314
150 86
153 652
154 166
154 176
155 269

134 451
161 293

134 451
158 659

134 451
170 440
171 86

134 451
189 ²264
f189 ²267

# THE CITY OF BLOOMINGTON

*v.*

# THE CHICAGO AND ALTON RAILROAD COMPANY.

*Filed at Springfield November 1, 1890.*

1. SPECIAL TAXATION—*upon contiguous property—in what cases allowable—conditions to the exercise of the power.* A city council has, by law, the power to widen, extend and further open the crossing of a public street under a railway track, but has no power, by special-taxation or otherwise, to provide for the building of a railroad bridge over a street crossing as a local improvement.

2. Where the ordinance fails to show any proper case for special taxation of contiguous property, or such ordinance is grossly unreasonable, unjust and oppressive, that may be shown in defense of an application to confirm the levy of special taxes.

3. An ordinance which requires the widening of a street crossing a railroad under its track, and for the construction of a railroad bridge over the enlarged crossing, to be paid for principally by the railway company's contiguous property specially taxed for that purpose, without any compensation to the company for the burden attempted to be imposed on it, is not only unreasonable, but clearly in excess of the powers conferred on the city council, and void.

4. An ordinance which shows on its face an attempt to subject property to special taxation to pay for an improvement, which property will in no way be benefited by such improvement, will not justify proceedings for the levy of such taxes. Special taxes for local improvements are justified only on the ground that the subject of the tax receives an equivalent.

5. Where it is apparent that a local improvement can not benefit contiguous or adjacent property, the levy of special taxes on such property for the purpose of making such improvement can not be sustained.

6. The corporate authorities of cities and villages may not arbitrarily provide, by ordinance, that an improvement within their corporate limits shall be treated as a local improvement, to be paid for by special taxation of abutting property, without reference to benefits, without having their action reviewed by the courts.

7. SPECIAL ASSESSMENTS—*objections to confirmation—not all of them well taken.* There is no error in refusing a motion to strike out all of the objections to the confirmation of a special assessment, for irrelevancy, unless none of them present a defense.

APPEAL from the County Court of McLean county; the Hon. C. D. MYERS, Judge, presiding.

Mr. A. E. DE MANGE, and Mr. LAIN WELTY, City Attorney, for the appellant:

If the objections had been demurred to, the demurrer would not have admitted the truth of the objection. *Enos* v. *Springfield,* 113 Ill. 65; *Fagan* v. *Chicago,* 84 id. 235; *Chicago* v. *Sherwood,* 104 id. 554.

What possible connection is there between the city's right to levy and have confirmed special taxes to pay for a local improvement, and the payment to objector of the amount of its condemnation judgment? It has been determined by this court that there is none. *Fagan* v. *Chicago,* 84 Ill. 236; *Hyde Park* v. *Borden,* 94 id. 36; *Holmes* v. *Hyde Park,* 121 id. 128.

The statute gives cities exclusive discretion and power to determine whether a proposed improvement shall be made, and whether it shall be done by special taxation, special assessment or general taxation. It is a political power and discretion, and the courts have no power to interfere with it. *Fagan* v. *Chicago,* 84 Ill. 231; *Ricketts* v. *Hyde Park,* 85 id. 112; *People ex rel.* v. *Hyde Park,* 117 id. 462; *Dunham* v. *Hyde Park,* 75 id. 374; *Sterling* y. *Galt,* 117 id. 17; *Springfield* v. *Green,* 120 id. 271.

Where the city extends a street across a railroad, and no compensation is paid, the city must restore the track, etc., to its former state.    Starr & Curtis' Stat. 472.

The exact question which appellee attempted to raise in the court below has been passed upon by the courts of last resort in several different States, and always with the same result. *Gennet* v. *Brooklyn,* 99 N. Y. 296; *People ex rel.* v. *Mayor,* 4 id. 419; *Livingston* v. *Mayor,* 8 Wend. 85; *Railroad Co.* v. *Bennett,* 10 Hun, 91; *State* v. *Kansas City,* 89 Mo. 34.

A case which arose in Ohio, upon bill for injunction, was thoroughly discussed by the Supreme Court, and all the judges

concurred in reversing a decree for an injunction. *Cleveland* v. *Wick,* 18 Ohio St. 303.

The question as to whether the imposition of this tax imposes a peculiar hardship in this case ought to be left to a court of equity, if the defendant seeks its aid, by bill to enjoin, and which could hear evidence outside. *Brush* v. *Carbondale,* 78 Ill. 74; *Holmes* v. *Hyde Park,* 121 id. 130.

Under the present constitution and statute of this State special taxes may be levied without regard to benefits, and without regard to whether the tax exceeds the value of the property upon which it is levied. *Springfield* v. *Green,* 120 Ill. 269; *Murphy* v. *People,* 120 id. 240; *Enos* v. *Springfield,* 113 id. 72.

Messrs. WILLIAMS & CAPEN, for the appellee:

The constitution provides that private property shall not be taken for public use without just compensation. Const. art. 2, sec. 13.

The land owner must be paid in money, alone, the full value of the land taken, irrespective of any benefits and advantages which may result to his remaining land. *Hayes* v. *Railroad Co.* 54 Ill. 373; *Todd* v. *Railroad Co.* 78 id. 530; *Railroad Co.* v. *Laurie,* 63 id. 264; *Hyslop* v. *Finch,* 99 id. 171; *Carpenter* v. *Jennings,* 77 id. 250; *Green* v. *Chicago,* 97 id. 370; *Harwood* v. *Bloomington,* 124 id. 48.

The present proceeding is contrary to the constitutions of the United States and the State of Illinois. *Scott* v. *Toledo,* 36 Fed. Rep. 369; *Stuart* v. *Palmer,* 74 N. Y. 183.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

On the 10th day of January, 1890, the city council of the city of Bloomington, in pursuance of the provisions of article 9, chapter 24, of the Revised Statutes, passed an ordinance entitled "An ordinance for the opening and widening of Olive street," as follows:

"Sec. 1. That the crossing for Olive street under the Chicago and Alton railroad be widened and extended and further opened across and embracing the following described real estate, to-wit: Commencing at the intersection of the east line of the right of way of said Chicago and Alton railroad with the south line of Olive street; thence northeasterly along the east line of said right of way of said railroad to the north line of Olive street; thence west parallel with the north line of Olive street west of said railroad, to the west line of said right of way of said railroad; thence southeasterly along the west line of said right of way of said railroad, to the south line of Olive street; thence east to the place of beginning. And for that purpose all necessary excavating, grading, and all other necessary work to open said passage for said street, shall be done.

"Sec. 2. After said street has been so opened and widened and extended, as provided in section 1 of this ordinance, then there shall be erected over said passageway, and under the rails of the Chicago and Alton Railroad Company, an iron bridge. Said bridge shall have iron girders of sufficient capacity and dimensions to support all railroad tracks now laid and operated by said Chicago and Alton Railroad Company, and all such cars, locomotives and other rolling stock as may in course of time be run over the same. Said bridge shall have a clear span of forty feet. Said girders shall be supported at each end by stone abutments, constructed of a good quality of Joliet limestone. There shall be a clear headway under said bridge of not less than twelve feet from the bottom of said girders, when laid, to the surface of said passageway below. A twelve-inch sewer inlet shall be placed in said passageway of said street, under the center of said bridge, and shall be connected by twelve-inch sewer pipe with the Orchard Lane sewer now under said street,—all according to plans and specifications on file in the office of the city clerk of said city.

"Sec. 3. That the entire cost of opening, widening and extending said street and of constructing said bridge, as provided

in sections 1 and 2 of this ordinance, and the cost of assessing and collecting a special tax to pay therefor, shall be paid for by special taxation of the property and real estate abutting or fronting on said improvement, and for that purpose a special tax is hereby ordered to be levied upon the property and real estate fronting or abutting upon said improvement, equal to the entire cost of the same, together with the cost of assessing and collecting such special tax.

"Sec. 4.   That when said improvement is completed, then the approaches thereto from Olive street as it now is, both east and west of said proposed improvement, shall be excavated, graded and filled so as to properly connect with said improvement; and the entire cost of such excavating, grading and filling said approaches shall be paid for by general taxation, and shall be included in the annual appropriation ordinance for the ensuing year, and levied and collected as a part of the general taxes of said city.

"Sec. 5.   That Cheney Moulton, George McIntosh and William Stautz are hereby appointed to make an estimate of the cost of said entire improvement so provided to be paid for by special taxation, including the cost of assessing and collecting the special taxes to pay therefor, and also a separate estimate of the cost of grading and filling said approaches, and report the same to the city council of said city."

The committee appointed to estimate the cost of the improvement made the following report:

"Cost of excavating and grading for all that part of said improvement to be paid for by special taxation, - - - - - - - $911.00

Cost of stone masonry for said improvement, - 7,364.00

Cost of all other materials and labor, - - - 7,224.00

Court costs, including the cost of assessing and collecting the special taxes provided for in said ordinance, - - - - - - - 300.00

Total to be paid for by special taxation, - - $15,799.00"

In due course, commissioners were appointed to assess the special tax provided for in the ordinance, who made the following assessment, viz:

"*Chicago and Alton Railroad Co.*—The right of way, franchise and right of occupancy of the Chicago and Alton Railroad Company, 100 feet in width, extending from the north line of Olive street, in a northeasterly direction, to the south line of Washington street, in the city of Bloomington, McLean county, Illinois, including the railroad located thereon,    -    -    -    -    $7,899.50

*Chicago and Alton Railroad Co.*—The right of way, franchise and right of occupancy of the Chicago and Alton Railroad Company, 100 feet in . width, extending from the south line of Olive street, in a southwesterly direction, to the city limits, being the north line of Sec. 8, in T. 23 N., R. 2, E. of 3d P. M., including the railroad located thereon, all in McLean county, Illinois,    7,899.50

Total amount,    -    -    -    -    -    $15,799.00"

To this report appellee filed many objections, and appellant moved to strike them from the files, because they were irrelevant, and presented no legal defense to the confirmation of said report. The motion was overruled. Quite a number of the objections were irrelevant, but the motion was to strike out all of them, pointing out no specific objection to either. There was therefore no error in overruling the motion, unless it could be maintained that none of them presented a valid defense to the assessment, which is not insisted upon.

Upon overruling said motion, certain of the objections were sustained and the petition dismissed, to which order appellant duly excepted, and prayed this appeal.

Among the objections sustained were the following:

"10. Said ordinance, petition, and all proceedings thereunder, are grossly unreasonable, unjust and oppressive against the defendant, and therefore void."

"18.  Because said petition and ordinance do not show any state of case where it is lawful to assess any special tax against the said property."

These go to the entire merits of the case, and if it shall be found that they were properly sustained, it will be unnecessary to notice others.   They go to the regularity of the proceeding as shown by the ordinance, and subsequent proceedings, and therefore whether or not evidence should have been heard as to other objections, is of no consequence.

A fatal objection to the ordinance lies in the fact that it attempts to provide for the building of a railroad bridge for appellee as a local improvement.   While the statute does not define a local improvement, within the meaning of section 1, chapter 24, article 9, of the Revised Statutes, certainly no one will contend that by that section power is conferred upon the corporate authorities of cities and villages to make improvements other than of a public nature and for the benefit of the corporation.   Here, the city council had the power to widen, extend and further open the crossing of Olive street under the railroad grade and track, but we are at a loss to find any authority, in the statute or elsewhere, empowering it to say what kind of a bridge shall be placed over that crossing for the use of the railroad.   Section 3, and subsequent sections of said article 9, provide, that when a local improvement requires the taking or damaging of property, just compensation therefor shall be ascertained, and paid to the owner.   If the improvement of Olive street took or damaged the property of the railroad company by requiring it to build a new crossing for its tracks, it would be entitled to just compensation therefor.   It must, however, build its own railroad bridge, and be held responsible to the public for its sufficiency and safety.   By what right can corporate authorities of cities and villages undertake to say what the structure of a railroad bridge shall be,—what will be sufficient "to support all tracks now laid and operated,

and all such cars, locomotives and other rolling stock as may in course of time be run over the same?"

The improvement provided for in the second section of the ordinance, if built, would be solely for the benefit of the Chicago and Alton Railroad Company. It would in no way benefit the city of Bloomington. It would belong to the railroad company, and of necessity be under its exclusive control and management. The whole cost of the improvement to be paid for by special taxation, as shown by the estimate, is $15,499, $911 of which would be expended on the improvement of Olive street, and $14,588 in erecting the railroad bridge. In this case the intention was to compel the railroad company to pay the entire cost; but that does not affect the question of power in the city council to build the bridge by special or any other kind of taxation. Moreover, if the railroad company is compelled to pay for the bridge, and as it must clearly be held responsible to the public for its safety, and is alone interested in the question of its capacity, why should it not be allowed to determine how and of what material it should be made, and why should it not be allowed to contract as best it may for building it?

For the reasons stated, the ordinance is not only unreasonable, but clearly in excess of the power conferred upon the city council.

We think it is subject to the further fatal objection, that it shows on its face an attempt to subject property to special taxation to pay for an improvement, which will in no way be benefited by such improvement. It is clear from the description of the improvement, and the requirement that it should be paid for by special taxation of abutting property, that the right of way, etc., of the appellee, north and south of "Olive street," would necessarily be compelled to bear the entire burthen of the special tax to be levied,—and the assessment made so demonstrates. It also clearly appears that the contemplated change in the street would damage, rather than benefit,

the railroad company. It would at least necessitate an expenditure of the cost of a railroad bridge, as shown by section 2 of the ordinance, (which the city council estimate at $14,588,) to restore its grade and track. It is impossible to see how "the right of way, franchise and right of occupancy" of the railroad company abutting on the street could be benefited by the proposed change in the street crossing.

Special taxes for local improvements, like special assessments, "are justified on the ground that the subject of the tax receives an equivalent." (*Allen* v. *Drew,* 44 Vt. 175, cited in *White* v. *The People ex rel.* 94 Ill. 604.) "Taxation for local improvements is intended for the benefit of the property subjected to such tax, and although such benefits may not be exactly confined to contiguous property, yet for practical purposes it will generally be so nearly so, that to simplify the proceeding, and avoid the expense and delay of nicely adjusting the equities, the constitution has provided the property contiguous to the improvement may be required to bear this burthen, inasmuch as that, as a general rule, will do no serious injustice." *Craw et al.* v. *Village of Tolono et al.* 96 Ill. 261.

The only difference in special assessments and special taxation as to benefits is, that in the latter case the determination of the city council is final,—not an arbitrary, unreasonable determination, but one which can be seen to be fairly and reasonably made. In *White* v. *The People ex rel. supra,* (at page 613,) it is said: "The city council have determined the frontage to be the proper measure of probable benefits. *That is generally considered as a very reasonable measure of benefits in the case of such an improvement;* and if it does not, in fact, in the present case, represent the actual benefits, it is enough that the city council have deemed it the proper rule to apply." So it was said by Chief Justice DICKEY in *Craw et al.* v. *Village of Tolono et al. supra,* speaking of the rule laid down in *White's case,* and apprehensions of its abuse: "So long as it is confined to sidewalks there is little cause for such appre-

hension.   It will be time enough to consider the question when a case of apprehension occurs.   Meanwhile it may not be amiss to suggest that all this must be done, if at all, by ordinance, *and it must be remembered that ordinances, to be valid, must be reasonable,—not unfair or oppressive,—and must spring from an honest exercise of legislative discretion."*

It needs no argument to show that the effect of widening and extending the crossing of "Olive street," upon the property taxed by this ordinance, is entirely different from that on abutting property by the laying a sidewalk, or grading a street in front or along the side of it.   In the one case, common observation teaches us that the improvement of the sidewalk or street benefits the property.   Here, the ordinance shows, on its face, that the taxed property must be injured, and in no way benefited.   The power of a city council to declare what shall be a local improvement is an implied power. An ordinance exercising that power, though regularly passed, must be reasonable, otherwise it is void.   (1 Dillon on Mun. Corp. sec. 319 ; *Wiggins* v. *City of Chicago,* 68 Ill. 372 ; *Tugman* v. *City of Chicago,* 78 id. 405 ; *Craw* v. *Tolono, supra.*) To hold that the corporate authorities of cities and villages may, under section 1 of article 9, *supra,* arbitrarily provide, by ordinance, that any improvement within their corporate limits shall be treated as a local improvement, to be paid for by special taxation on abutting property, without reference to benefits, and that such action can not be reviewed, would be to clothe such authorities with unprecedented power, and, we have no doubt, violate the intention of the legislature in adopting that section.

It is said, it was the statutory duty of appellee to do that which this ordinance requires of it.   That question is not before us ; but if it be conceded, it by no means follows that this ordinance is valid.

In our opinion, the judgment of the county court was right, and it will be affirmed.                       *Judgment affirmed.*