W. G. DAVIS *et al.*

*v.*

CITY OF LITCHFIELD.

*Filed at Springfield, April 3, 1893.*

1. LOCAL IMPROVEMENT — *by special taxation — ordinance therefor.* Where an ordinance for the paving of a part of a street requires that the whole cost of the proposed improvement, other than street and alley intersections, shall be levied by special taxation of the contiguous lots, etc., but only to the amount of the cost of the pavement in front of any such lot or parcel of land, so that each piece of property shall pay the full amount of the cost of the improvement in front of it, and no more or less, this will not be the imposition of a special tax upon contiguous property, but will be an arbitrary and unlawful imposition of the burden upon each lot of the making of the improvement in front of it.

2. A city ordinance required a street pavement of different widths, so that the cost of the improvement was not uniform as to the entire length, to be paid for by special taxation of contiguous property according to frontage, except street and alley intersections, which were to be paid for by general taxation. The ordinance was afterward amended, requiring the tax to be levied upon such contiguous lots according to frontage, "but only in proportion to the amount of pavement in front of each of said lots, parts of lots, and parcels of land along the line of said improvement." *Held*, that the amendment to the ordinance rendered it, and the proceedings under it, void.

3. SAME—*taxing the cost according to frontage.* Where a local improvement of a street by a city is of the character that the benefits may be expected to diffuse themselves along the line of the improvement, in a degree bearing some proportion to the frontage, a division of the burden by that standard may be appropriately adopted. This court is committed to the rule that the municipality may adopt the frontage of the contiguous property, as the measure and standard of apportioning special taxes.

4. SPECIAL ASSESSMENTS—SPECIAL TAXATION—*according to frontage—ordinance limited to a single improvement—taxing districts.* In all such cases the limits of the improvement are, within the discretion of the city council, to be fixed by ordinance, subject only to the requirement that the improvement shall be so far single, that, presumptively at least, some benefit will flow from the improvement to the property that is to be subjected to taxation. When the limits to the improvement are fixed by ordinance, the contiguous property is created by law into a taxing district, and when the tax is to be imposed according to frontage, presumptively each lot or parcel of land is benefited by the proposed improvement, and its cost, or such part thereof as is required to be paid by the special tax, is to be apportioned upon such contiguous lots, etc., in the proportion that the front of each bears to the entire frontage included within the taxing district, and made subject to the tax.

5. Sidewalks on each side of the street may be included as a single improvement, and so may the improvement of different streets. And the courts will not interfere with the exercise of the discretion of the legislative power of a city in fixing the limits of the taxing district, except to correct a clear abuse of discretion. But if, in the combination of streets and the like, the improvements should be so separate and distinct that the making of one can not be reasonably said to benefit property abutting upon the other, their combination will be clearly violative of the rule governing in such cases.

6. SAME—*power of municipal corporations to make local improvements.* In a proceeding by a city to make a local improvement by the levy of a special tax upon contiguous property, no authority is given either by express words or by necessary implication, to arbitrarily assess against

any particular lot or tract of land, more than its proportionate share of the cost of the improvement ordered to be raised by special taxation, and the expense of levying and collecting the same.

7. The rule applicable to general taxation, that no power can be exercised by a municipal corporation which is not clearly granted, and that the power granted must be strictly pursued, applies with equal force to all species of special taxation for local improvement. When the power is clearly given, then, in the exercise of the power, the pro-·visions of the imposition of the tax must be strictly followed.

8. By Sec. 9, Art. 9 of the Constitution, the legislature may vest the authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property or otherwise. For all other purposes taxation by cities, etc., is required to be uniform. The only way in which the legislature has authorized cities, towns and villages to make local improvements, otherwise than by special assessment or special taxes, is by general taxation.

9. SAME—*distinguished from general taxation.* General taxes are compensated for by the protection afforded by the government to life, liberty and property. They are a burden borne in return for the benefits afforded by civil liberty, and to which all are compelled to contribute upon some recognized basis of equality. But special taxes are not regarded as burdens upon the citizens, but are imposed as an equivalent or compensation for the enhanced value, real or presumptive, of the property from the public improvement for which they are levied.

10. Hence, special taxation for a local improvement, as well as special assessments of benefits for the same, necessarily proceeds upon the theory of benefits to the property upon which it is levied. A burden imposed upon any other theory is a mere arbitrary exaction, a taking of private property for public use without just compensation.

11. SPECIAL ASSESSMENTS—*special taxation distinguished.* Special taxation differs from the assessment of special benefits, only that in the one the benefits are ascertained in a mode prescribed by law, while in the other they are determined by the municipal authority. In special taxation the imposition of the tax is, of itself, a determination that the benefits to the contiguous property will be as great as the burden imposed. Hence, it has been held that when the determination of the city council is arbitrary and unreasonable in the imposition of the tax upon property in no respect benefited, the ordinance for the levy is void.

12. SAME—*equality and uniformity.* It has been said that the constitutional principle of equality of taxation applies as well to special assessments as to the ordinary modes of taxation, and that a special assessment would not be sustained which cast all the cost of an improvement upon a portion of the property benefited, and left other property equally benefited exempt.

13. TAXATION—*must be for a public purpose and uniform.* It is of the essence of a tax that it shall be levied for a public purpose, and shall be uniform in respect of persons and property within the taxing district, whether that be the State, county, municipality or district thereof, created for local improvement, and that it be laid according to some fixed rule of apportionment.

14. SAME—*power of municipal corporations—limitation of legislature.* The imposition of taxes is an exercise of the sovereign power, which under our system may be exercised by the legislature without limitation, except as restricted by the State or Federal constitutions; this power may be delegated to the municipal authorities of the State as instrumentalities of government for the purpose of carrying on municipal affairs.

APPEAL from the County Court of Montgomery County; the Hon. GEO. R. COOPER, Judge, presiding.

. The city of Litchfield, incorporated under a special charter, on the 6th of November, 1890, adopted article 9 of the general act for the incorporation of cities, towns and villages.

On May 14, 1892, an ordinance was duly passed for the "grading, graveling, guttering, curbing and paving with brick" of State street in said city, from the south line of Hayward street to the south line of Third street, "the cost thereof to be paid for by the special taxation of the lots, parts of lots and parcels of land, abutting upon said street upon both sides thereof, along the line of said improvement."

Section 3 provided for the extent and character of the improvement, and is sufficiently set out in the opinion. The 4th section appoints certain persons a committee, "to make a separate estimate of the cost of paving said street mentioned in section 1 of this ordinance, excepting so much thereof as is included in the street and alley intersections and crossings of the same," etc., including the cost of levying and collecting the special tax ordered, and also a separate estimate of the cost of paving said street and alley intersections and crossings.

Section 5 provided that the expense of paving the street and alley intersections and crossings should be included in and paid from the general taxes of the city. And section 6, that the remainder of the cost of said improvement be paid by said special taxation, and for that purpose a special tax, equal in amount to the whole cost of paving said street, except the intersections and crossings, including the cost of levying and collecting the special tax, is ordered to be levied, assessed and collected "upon and from each of said lots, parts of lots and parcels of land, in proportion to the frontage thereof upon said street along the line of said improvement," etc. The remaining sections relate to the manner of perfecting the tax, letting the contract for and completing said improvement. Section 14 of the ordinance divided the special tax into five installments, payable 20 per cent upon the confirmation of the tax, and 20 per cent each year thereafter, etc. The committee named in the ordinance reported the cost of the improvement, excluding intersections and crossings, $6,869.13; cost of paving the street and alley intersections, $2,076.26. It was thereupon ordered by the city council, that petition be filed in the County Court for further proceedings in conformity with the ordinance and the statute, which was accordingly done, and commissioners appointed to make the levy and assessment "in the manner prescribed in said ordinance," etc. Subsequently, and at the May term, 1892, of said County Court, said commissioners filed a report or tax roll, showing an assessment upon the property abutting upon said improvement.

It appeared from said report that the assessment was made according to frontage; but it also appeared that the assessment, as against 247 feet of the frontage, was levied at the rate of $6.40½ per front foot; and as to 320 ft. frontage, at the rate of $5.28¾ per front foot; and as to 88 ft. frontage, at the rate of $6.87½ per front foot; and as to 66 ft. frontage, $4.03⅓ per front foot; and as to 150 ft. frontage, at the rate of $5.86 2-10 per front foot.

Upon the return of the assessment roll, numerous objections were filed by lot owners, which were set for hearing Monday, June 6, 1892. On that day the city asked and obtained leave to amend its petition, which it did, showing that an amendatory ordinance had been passed, etc., on the 31st day of May, 1892. The amendatory ordinance provided, that the ordinance authorizing said improvement "be amended," by adding to section 6 of said ordinance the following words in quotation marks; "but only in proportion to the amount of pavement in front of each of said lots, parts of lots and parcels of land, along the line of said improvement so ordered to be made." It was further provided in the ordinance that the committee theretofore appointed to make an estimate of the cost of said improvement make an amended report thereof, in accordance with said original ordinance, "and in making the estimate of the cost therein provided to be levied, assessed and collected by special taxation, they shall also make a separate estimate of the cost to be levied, assessed and collected by special taxation, for the different widths of pavement so ordered to be made." They made and returned an estimate substantially as before, which was approved by the board, etc. Objections were filed to the confirmation of the tax roll returned, by the several land owners, which were overruled by the court, and the special tax roll returned by the commissioners appointed by the court was approved and confirmed, etc. The land owners prosecute the present appeal.

Mr. JAMES M. TRUITT, for the appellants:

Courts will not hesitate to declare an ordinance, and proceeding under it, unreasonable if oppressive, and therefore null and void. *Wiggins* v. *Chicago,* 68 Ill. 372; *Tugman* v. *Chicago,* 78 id. 405; *Craw* v. *Tolono,* 96 id. 261; *Bloomington* v. *C. & A. R. R. Co.,* 134 id. 451; *Lake View* v. *State,* 130 id. 247; 1 Dillon on Mun. Corp., sec. 328 and sec. 1; *Caldwell* v. *City of Alton,* 33 Ill.

416; *Bloomington* v. *Wahl,* 46 id. 489; *Gridley* v. *Bloomington,* 88 id. 584; *Chicago* v. *O'Brien,* 111 id. 532; *Hyde Park* v. *Carlton,* 132 id. 100.

"The power of a city council to declare what shall be a local improvement is an implied power." *City of Bloomington* v. *C. & A. R. R. Co.,* 134 Ill. 451–460.

"The only difference in special assessments and special taxation as to benefits is, that in the latter case the determination of the city council is final—not an arbitrary, unreasonable determination, but one which can be seen to be fairly and reasonably made." *City of Bloomington* v. *C. & A. R. R. Co.,* 134 Ill. 451.

Special taxes for local improvements, like special assessments, are justified on the ground that the subject of the taxes receives an equivalent. *Enos* v. *City of Springfield,* 113 Ill. 65; *The City of Bloomington* v. *C. & A. R. R. Co.,* 134 id. 451.

Where the charge is to be "in proportion to frontage," the amount of the whole work is to be ascertained, and each lot charged in the proportion its front bears to that of all the lots. *Neenan* v. *Smith,* 50 Mo. 292; S. C., 60 id. 292; *St. Louis* v. *Clemens,* 49 id. 552; Cooley on Taxation, 1st Ed., 453; *Matter of Tenfler,* 44 Barb. 46.

Mr. John P. Gardner and Mr. Milton M. Creighton, for the appellee:

In support of the validity of the ordinance and the proceedings referred to and commented upon: 17 Am. & Eng. Enclyp. of Law, 248; *Springfield* v. *Green,* 120 Ill. 277; *Enos* v. *Springfield,* 113 id. 71; *Craw* v. *Tolono,* 96 id. 256; *Galesburg* v. *Searls,* 114 id. 217.

The owner of the abutting property may be required to bear the whole expense of the improvement in front of his particular property. 2 Dillon Mun. Corps., sec. 753; *Warren* v. *Henly,* 31 Iowa, 31; *Weeks* v. *Milwaukee,* 10 Wis. 258.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The ordinance provided for the improving and paving of State street, from the south line of Hayward street to the south line of Third street, in the city of Litchfield, the entire length being practically three blocks. The pavement, from the south line of Hayward street to the north line of Division street, a distance of about 240 feet, was required to be 75 feet wide, or 37½ feet on each side of the center line of the street. From the north line of Division street to the south line of Fourth street, practically 230 feet, the pavement was required to be of the width of 64 feet, or 32 feet on each side of the center line. From the south line of Fourth street north to the south line of Third street, the north end of the improvement, it was provided that there should be left in the center of the street a park or plat of ground 20 feet wide, and that the pavement between said points should be twenty-two feet wide on each side of said plat, thereby making the pavement, from the south line of Fourth street to the south line of Third street, a distance of about 320 feet, 44 feet wide.

The ordinance provided that the improvement should be paid for except street and alley intersections and crossings, by special taxation of contiguous property according to frontage upon the same, the cost of paving street and alley intersections and crossings to be paid by general taxation. The committee appointed by the ordinance to make an estimate of the cost of said improvement reported the total cost of the same, excluding street and alley intersections and crossings, and including the cost of levying and collecting said special tax, at $6,869.13, and the cost of the street and alley intersections and crossings at $2,076.26. Said estimate having been approved by the city council, a petition was duly presented to the County Court, and commissioners were appointed to assess said sum of $6,869.13 upon the property contiguous to said improvement.

Said commissioners, instead of complying with the order, and assessing the contiguous property according to frontage, assessed against the several lots, blocks and tracts of lands abutting upon the part of the street so to be improved, the estimated cost of the improvement in front of each lot, or tract of land, and in addition thereto a percentage to cover the cost of the collection. Upon the return of the assessment roll, and objections thereto being filed, the city asked and obtained leave to amend its petition, and the cause was continued. The amendment was subsequently made setting up an amended ordinance, passed after the return of the assessment roll, requiring that the tax be levied upon such contiguous lots, parts of lots and tracts of land, according to frontage, "but only in proportion to the amount of pavement in front of each of said lots, parts of lots and parcels of land, along the line of said improvement." And the committee appointed in the original ordinance was required to make and return an amended estimate, showing the cost to be levied as a special tax, and to "make a separate estimate of the cost to be levied, assessed and collected by special taxation, for the different widths of pavement so ordered to be made," which was done. The assessment roll, as originally returned, was, against the objection of contiguous lot owners, confirmed by the court.

Numerous questions are raised upon this record going to the validity of the special tax, but we shall confine ourselves to a discussion of the power of the city to thus impose the burden.

It is practically conceded, and if it were not it must be held, that the assessment roll returned was not in compliance with the provisions of the ordinance, requiring that the tax be assessed according to frontage. The contiguous property was assessed at various sums, ranging from $4.03½ to $6.87½ per front foot. In cases where the improvement is of the character that the benefits may be expected to

diffuse themselves along the line of the improvement, in a degree bearing some proportion to the frontage, a division of the burthen by that standard may appropriately be adopted. Cooley on Tax., 433–4. And indeed this mode, may in some instances be more reasonable and just, than assessment upon a valuation of the contiguous property. Ordinarily, perhaps, the power to adopt this method has been denied, unless sanctioned by express legislative authority. But we are committed to the rule holding that the municipality may adopt it as the measure and standard of apportioning special taxes. See *Wilbur et al.* v. *Springfield*, 123 Ill. 395, and cases cited. In all such cases the limits of the improvement are within the discretion of the city council, to be fixed by ordinance, subject only to the requirement that the improvement shall be so far single, that presumptively at least some benefit will flow from the improvement to the property that is to be subjected to taxation. When the limits of the improvement are fixed by the ordinance, the contiguous property is created by law into a taxing district, and when the tax is to be imposed according to frontage, presumptively each lot, or parcel of land, is benefited by the proposed improvement, and its cost, or such part thereof as is required to be raised by the special tax, is to be apportioned upon such contiguous lots, blocks and parcels of land, in the proportion that the front of each bears to the entire frontage included within the taxing district, and made subject to the tax. *Neenan* v. *Smith*, 50 Mo. 292; S. C., 60 id. 292; *St. Louis* v. *Clemens*, 49 id. 552; Burroughs on Tax., 468 *et seq.;* Cooley on Tax., 451–2.

By the ordinance the city created a taxing district, composed of property contiguous to the improvement, and having done so, the question is fairly presented, whether they may arbitrarily determine that each lot and tract of land shall bear the cost of the improvement in front of it. By the Constitution (art. 9, sec. 9) it is provided: "The General

Assembly may vest the corporate authorities of cities, towns and villages, with power to make local improvements by special assessment, or by special taxation, of contiguous property, or otherwise.'' For all other purposes taxes are required to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. By reference to the statute, it will be observed, that the only way in which the legislature has expressly authorized cities, towns and villages to make local improvements, otherwise than in the two modes specifically designated in the provision of the constitution quoted, is by general taxation.

Section 2, of art. 9, of the Cities and Village act, provides: ''When any such city or village shall by ordinance provide for the making of any local improvement, it shall by the same ordinance prescribe whether the same shall be made by special assessment or by special taxation of contiguous property, or general taxation, or both.''

The ordinance in this case complied with this provision of the statute, by prescribing that all of said improvements other than street and alley intersections and crossings, should be made by special taxation of contiguous property, and that such street and alley intersections and crossings should be paid for by general taxation.

While it is clear, we think, that the legislature has invested the municipalities of the State with power to make local improvements in the three modes especially designated only, a discussion of that question, or the power of the legislature to invest them with the right to make such local improvements otherwise, need not be here indulged.

As we have seen, the original ordinance had the effect of creating a taxing district, composed of the property contiguous to the improvement, and provided for the distribution of the special tax upon the contiguous lots and parcels of land, in the ratio that the frontage of each bore to the entire frontage upon the improvement. And the ordinance as amended still provides for levying the cost of the im-

provement upon the contiguous property, but only to the amount of the cost of the improvement in front of any such lot or parcel of land.    The whole cost of the improvement, other than street and alley intersections, etc., is to be taxed against the contiguous property, and it is therefore manifest, if the scheme or plan devised by the amendment is to be carried into effect, each piece of property will pay the full amount of the cost of the improvement in front of it, and no more or less.    This is not the imposition of a special tax upon contiguous property, but is an arbitrary imposition of the burden upon each lot of making the improvement in front of it.

The rule applicable to general taxation, that no power can be exercised by the municipality which is not clearly granted, and that the power granted must be strictly pursued, applies with equal force to all species of special taxation for local improvement.    When the power is clearly given, then, in the exercise of the power, the provisions for the imposition of the tax must be strictly followed.    Burroughs on Tax., 471; Cooley on Tax., 209 *et seq.*, 418; Dillon on Mun. Corp., secs. 605–610; Cooley's Const. Lim., 646.    The authorities sustaining this doctrine are collected by the text writers mentioned, and need not be cited here. ''In the construction of any grant of the power to tax, made by the State to one of its municipalities, the rule which is accepted by all the authorities is, that it should be followed with strictness.    The reasonable presumption is held to be, that the State has granted in clear and unmistakable terms all it has intended to grant at all; and whatsoever authority the municipal officers assume to exercise, they must be able to show the warrant for in the words of the grant. '' (Cooley on Tax., 209).    The imposition of taxes is an exercise of the sovereign power, which, under our system, may be exercised by the legislature without limitation, except as restricted by State or Federal constitutions.    That this power may be delegated to the mu-

nicipalities of the State, as instrumentalities of government, for the purpose of carrying on municipal affairs, is everywhere conceded. But it is universally declared and admitted, that the authority to levy taxes must be given either in express words, or arise by necessary implication from the words employed. "It is important," says Mr. Dillon, "to bear in mind that the authority to municipalities to impose burdens of any character upon persons or property is wholly statutory, and as its exercise may result in a divestiture and transfer of property, it must be clearly given and strictly pursued. This rule applies, as we have already seen (Ch. 16, sec. 470), to proceedings by municipal corporations under the delegated right of eminent domain, and it extends equally to proceedings under the taxing power, including special assessment for local improvements." 2 Dillon Mun. Cor., sec. 605. And it is equally well settled, that if the legislature has prescribed the mode in which the municipality shall exercise the power, all of the substantial requirements must be followed. *Scammon v. Chicago,* 40 Ill. 146; Dillon Cor., *supra,* and case cited; *Pa. R. R. Co.* v. *Canal Comrs.,* 21 Pa. St. 395; *Dubuque R. R. Co.* v. *Litchfield,* 23 How. 66.

The authorization, under which the city is proposing to make the improvement, is to levy a special tax upon contiguous property. And neither by express words, or necessary implication, in such case, is there authority conferred to arbitrarily assess against any particular lot, or tract of land, more than its proportionate share of the cost of the improvement ordered to be raised by special taxation, and the expense of levying and collecting the same.

General taxes are imposed for the support of government and to promote the well being and good order of society, and are, in theory at least, compensated for by the protection afforded by the government to life, liberty and property. It is the burden borne in return for the benefits afforded by civil liberty, and to which all are compelled to

contribute upon some recognized basis of equality. Special taxes are not regarded as burdens upon the citizen, but are imposed as an equivalent or compensation for the enhanced value, real or presumptive, of the property, from the public improvement for which they are assessed. (1 Desty on Tax., secs. 3, 4.) In the one case the benefit contemplated inures to all the inhabitants of the State, county or municipality, in which it is imposed; in the other the benefit is to the property itself, arising from its increased value in consequence of the improvement. Beyond the increased value thus occasioned, the owner of the land receives no benefit not common to all the inhabitants of the municipality. Hence, special taxation for a local improvement, as well as special assessments of benefits for the same, necessarily proceeds upon the theory of benefits to the property upon which it is levied. A burden imposed upon any other theory becomes a mere arbitrary exaction; a taking of private property for public use without just compensation. Burroughs on Tax., 467–8, cases cited.

Special taxation differs from the assessment of special benefits only, that in the one the benefits are ascertained in a mode prescribed by law; in the other, they are determined by the municipal authority. "In special taxation the imposition of the tax is, of itself, a determination that the benefits to the contiguous property will be as great as the burden imposed." *Craw* v. *Village of Tolono*, 96 Ill. 256; *White* v. *The People*, 94 id. 607; *Enos* v. *Springfield*, 113 id. 65. It was said in *Craw* v. *Tolono*, *supra*, that "special taxation, as spoken of in the constitution, is based upon the supposed benefit to the contiguous property, and differs from special assessment only in the mode of ascertaining the benefits." Hence, it has been held that where the determination of the city council was arbitrary and unreasonable in the imposition of the tax upon property in no respect benefited, the ordinance was void. *City of Bloomington* v. *C. & A. R. R. Co.*, 134 Ill. 451; *Louisville Rolling Mill Co.*, 3 Bush, 416.

It is of the essence of a tax, that it shall be levied for a public purpose, and shall be uniform in respect of persons and property within the taxing district, whether that be the State, county, municipality, or district thereof, created for local improvement, and that it be laid according to some fixed rule of apportionment. "Equality," says Mr. Desty (1 Desty on Tax., 29), "in the imposition of the burden, is of the very essence of the right, and though absolute equality, and absolute justice, may not be attainable, the adoption of some rule tending to that end is indispensable. Equality, as far as practicable, and security of property against irresponsible power, are principles which underlie the power of taxation, as declared ends and principles of fundamental laws." Dillon on Mun. Cor., 587, and notes.

In the idea of a tax, it is inherent that it shall be upon some system of apportionment, securing practical uniformity among those subject to it. So it has been held, that the burden must be imposed upon all property within the limits of the district taxed. *Primm* v. *Belleville*, 59 Ill. 142; *Hale* v. *Kenosha*, 29 Wis. 599. And it has been said that the constitutional principle of equality of taxation applied as well to special assessments as to the ordinary modes of taxation, and that a special assessment would not be sustained, which cast all the cost of an improvement upon a portion of the property benefited, and left other property, equally benefited, exempt. *Bigelow* v. *Chicago*, 90 Ill. 49; *Chicago* v. *Baer*, 41 id. 306; *Scammon* v. *Chicago*, 42 id. 192; *Parmelee* v. *Chicago*, 60 id. 267; see, also, *Kuehner* v. *Freeport*, 143 id. 92.

The extent of the improvement, and what shall be included within it, and its nature and character, are within the legislative discretion of the city council. Sidewalks on each side of the street may be included as a single improvement, as in *Watson* v. *Chicago*, 115 Ill. 82; and the improvement of different streets may be included in a single

scheme of improvement, as in *Springfield* v. *Green et al.*, 120 Ill. 273; and *Wilbur* v. *Springfield*, 123 id. 399. Burroughs on Tax., sec. 146; Cooley on Tax., 450, 451. The limits of the district rest in the discretion of the legislative power, and the courts will interfere only to correct a clear abuse of the discretion. In theory (and the practice should in all cases, of imposing special taxes, conform to the theory) the limits of the improvement should be so fixed as that the property to be taxed shall receive some benefit from the proposed improvement. Absolute equality, as already said, is not attainable. But if in the combination of streets, and the like, they should be so separate and distinct that the making of one could not reasonably be said to benefit property situated upon the other, their combination would be clearly violative of the rule governing in such cases. Cooley on Tax., 447–8–9, and notes.

The district having been established by ordinance, the tax is to be imposed upon some rule of apportionment, which shall, in theory at least, conform to and be productive of uniformity in its levy. If the rule of apportionment by frontage is adopted by the ordinance, then each lot, piece or parcel of land, is, as we have seen, required to bear its proportion of the whole cost of the improvement, ordered to be raised by special taxation, in the ratio its frontage bears to the whole frontage upon the improvement.

That the imposition here sought to be made is not special taxation of contiguous property, seems clear.

Instead of establishing a taxing district, and apportioning the cost of the improvement upon the property within it by some standard of benefit, actual or presumptive, it is an arbitrary and forced contribution, and could be sustained only, if at all, when made under an express grant by the legislature of the State. Cooley on Tax. 453–4, and note 1; Burroughs on Tax., 465; cases cited note 5. It is said by Mr. Cooley: "If such a regulation constitutes the appor-

tionment of a tax, it must be supported when properly ordered by or under the authority of the legislature. But it has been denied, on what seems the most conclusive ground, that this is permissible. It is not legitimate taxation, because it is lacking in one of its indispensable elements." It is evident that it is wholly subversive of the doctrine of uniformity in imposing the public burden, renders unnecessary the formation of a taxing district, and is consequently without apportionment. It is manifest that a major part of the cost of the improvement may be necessarily expended in front of a single lot. It may well happen that, by either cutting down the street or filling it, the value of the particular lot may be decreased, while all other property upon the improvement may be benefited. So the narrowing of the street by the creation of plats, for ornamentation, may add to the value of the contiguous property, while under the rule adopted it would lessen the burden imposed. We need not extend this discussion. In our opinion, the amendment rendered the ordinance and the proceedings under it void. And for the error in confirming the assessment roll returned by the commissioners, the judgment of the County Court is reversed.

*Judgment reversed.*