85 LRA 89n

EDWARD W. PAYNE et al.

v.

THE VILLAGE OF SOUTH SPRINGFIELD.

*Filed at Springfield May 12, 1896.*

1. APPEALS AND ERRORS—*what is reached by general objection to village ordinance.* A general objection to the introduction of a village ordinance upon a trial is insufficient to raise the question, on appeal, that the ordinance does not show that it had been approved by the president of the village.

2. SPECIAL ASSESSMENTS—*when ordinance does not provide for double improvement.* An ordinance for the construction of a main sewer with branches is not invalid, as providing for more than one improvement.

3. SAME—*failure of ordinance to provide for outlet of sewer—effect.* Failure of an ordinance for a sewer to provide for obtaining the right to open the sewer at its outlet, which is on private property, does not make the ordinance invalid.

4. SAME—*special tax levy in proportion to frontage is valid.* Levying a special tax for a sewer by frontage upon the lots of land along the streets in which the sewer is laid is not unlawful.

5. SAME—*effect of failure to assess railroad right of way.* That a railroad right of way through which a sewer passes under ground is not assessed a proportionate share of the special tax for such sewer is not a fatal objection to the ordinance.

6. SAME—*assessment cannot exceed committee's estimate.* An assessment of a special tax for a sewer in excess of the amount fixed by the estimating committee, and approved, is illegal.

APPEAL from the County Court of Sangamon county; the Hon. GEORGE W. MURRAY, Judge, presiding.

McGUIRE & SALZENSTEIN, and A. S. MURRAY, for appellants:

Where the ordinance does not provide for extending an improvement over private property no special tax or assessment can be levied, particularly where, unless this is done, there can be no improvement. *Cochran* v. *Park Ridge,* 138 Ill. 295; *Hutt* v. *Chicago,* 132 id. 352; *Hyde Park* v. *Carton,* id. 100; *St. John* v. *East St. Louis,* 136 id. 207.

The definition of the word "sewer," as given by Webster, is, "a drain or passage to convey off water and filth underground." *Drexel* v. *Town of Lake*, 127 Ill. 57.

The fact that the natural drainage is toward the land of the Fairbank Manufacturing Company would give the village no right to empty or carry its sewer through the company's land. 6 Am. & Eng. Ency. of Law, 22; *Jacksonville* v. *Lambert*, 62 Ill. 519.

The ordinance, as it fails to provide an outlet or means by which an outlet for the sewer can be obtained, confers no benefit on the property owners, and is void. *Hutt* v. *Chicago*, 132 Ill. 352; *Hyde Park* v. *Carton*, id. 100; *St. John* v. *East St. Louis*, 136 id. 207; *Bloomington* v. *Railroad Co.* 134 id. 451.

Local authorities have no right to assess the expense of a sewer among adjoining owners according to the number of feet front, without reference to other considerations. *Clapp* v. *Hartford*, 35 Conn. 66; *Agers* v. *Mayor*, 8 Vroom, 415; *Morford* v. *Under*, 3 Iowa, 82; *Seely* v. *Pittsburg*, 82 Pa. St. 260; *Washington Avenue case*, 69 id. 352; *Thomas* v. *Gains*, 35 Mich. 155.

The ordinance is void because the Wabash right of way, which is contiguous to the proposed improvement, is not to be taxed to pay for the cost of the improvement. *Kuehner* v. *Freeport*, 143 Ill. 92.

The constitutional provision of equality of taxation applies as well to special assessments as to the ordinary modes of taxation. *Chicago* v. *Baer*, 41 Ill. 306; *Scammon* v. *Chicago*, 42 id. 192; *Parmelee* v. *Chicago*, 60 id. 267; *Bigelow* v. *Chicago*, 90 id. 49.

The commissioners have levied a tax in excess of that fixed by the ordinance and estimates. *City of Sterling* v. *Galt*, 117 Ill. 11.

CONKLING & GROUT, for appellee:

The mere fact that sewers of different sizes were necessary in different parts of the system, and in one place

the sewer was of brick and in another of sewer pipe, can make no difference, as it was all a part of the same sewer system.    The whole question is thoroughly considered in the following cases and further comment is not needed: *Prout* v. *People*, 83 Ill. 155; *People* v. *Sherman*, id. 165; *Enos* v. *Springfield*, 113 id. 65; *Ricketts* v. *Hyde Park*, 85 id. 110; *Watson* v. *Chicago*, 115 id. 78; *Murphy* v. *Peoria*, 119 id. 509; *Springfield* v. *Green*, 120 id. 269; *Wilbur* v. *Springfield*, 123 id. 395; *Drexel* v. *Town of Lake*, 127 id. 54; *County of Adams* v. *Quincy*, 130 id. 566.

In *Hyde Park* v. *Borden*, 94 Ill. 26, the court says: "The statute does not require that the ordinance itself shall, when providing for an improvement, make any provision for acquiring the right to make the improvement upon the property of others." The doctrine of the *Borden case* is approved in *Holmes* v. *Hyde Park*, 121 Ill. 128; *Hunerberg* v. *Hyde Park*, 130 id. 156; *Leman* v. *Lake View*, 131 id. 389; *Cochran* v. *Park Ridge*, 138 id. 295.

As we have a good outlet at the village limits,—the east line of railroad,—it is doubtful if the village would have power to extend the sewer further.  *Shreve* v. *Cicero*, 129 Ill. 226; *Cochran* v. *Park Ridge*, 138 id. 295.

That the imposition of a special tax for a local improvement is of itself a determination that the benefits to contiguous property will be as great as the burden imposed, has been frequently held by this court.  *Springfield* v. *Green*, 120 Ill. 269; *White* v. *People*, 94 id. 604; *Craw* v. *Tolono*, 96 id. 255; *Falch* v. *People*, 99 id. 137; *Galesburg* v. *Searles*, 114 id. 217; *Enos* v. *Springfield*, 113 id. 65; *Sterling* v. *Galt*, 117 id. 11; *Wilbur* v. *Springfield*, 123 id. 395; *Railroad Co.* v. *Decatur*, 126 id. 92; *Springfield* v. *Green*, 130 id. 515; *County of Adams* v. *Quincy*, id. 566.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an appeal from a judgment of the county court of Sangamon county confirming the levy of a special tax by appellee to pay for constructing sewers in certain of

its streets.   The following is a plat of the village of
South Springfield, the dotted lines indicating the loca-
tion of the sewer:

The ordinance provides that the sewer shall be of
vitrified sewer-pipe thirty inches in diameter across the
railroad right of way, and then a single-ring brick sewer
thirty inches inside diameter along Locust and Sixth
streets to the north line of Ash street; from thence north
to Myrtle street vitrified sewer-pipe fifteen inches in di-

ameter and thence to the northern extremity twelve-inch vitrified sewer-pipe; from Ash street across Park block vitrified sewer-pipe twenty inches in diameter to the intersecting line of Seventh street extended; thence vitrified sewer-pipe fifteen inches in diameter to Myrtle street on Seventh and Eighth streets, and from Myrtle street north, pipe twelve inches in diameter,—the whole sewer to have necessary man-holes and inlets. Section 4 provides that the cost, through the right of way of the railroad, of street crossings, and of work in and across Park block, shall be paid for by general taxation, and section 5 provides that the remainder of the cost shall be paid by special taxation of the lots and land fronting or abutting on the streets in or along which said sewer is laid, in proportion to their frontage. Section 6 provides for appointing a committee to make estimates, and section 8 for letting the contract.

The committee appointed to make the estimate of the cost of the work made a report to the village board, which was set aside and the matter referred back to the same committee to make a corrected estimate. It again reported, estimating the cost of the various sizes of pipe and brick work prescribed in the ordinance, per foot, and the whole number of each kind which would be required to complete the work, which, with the cost of twenty-four inlets and one man-hole, aggregated $4237.80, as the "total cost of sewer complete." To this they added cost of levying, assessing and collecting, $343.67, making the total estimated cost $4581.47, which they divided, "total by general taxation, $1488.40; total amount by special taxation, $3093.07." This estimate was duly approved by the village board, and the village attorney ordered to file a petition in the county court for the levying of the special tax. The prayer of that petition was granted and commissioners duly appointed to make the assessment. To the assessment roll returned by these commissioners appellants filed numerous objections, which, upon

the hearing, were each overruled and the assessment confirmed, and objectors perfected this appeal.

The first ground upon which a reversal is insisted upon is, that the county court erred in admitting the ordinance in evidence because it does not show that it was approved by the president of the village board. The only objection made to the introduction of the ordinance upon the trial was a general one. If it was intended to insist that the ordinance did not show upon its face that it had been approved by the president, that objection should have been pointed out, so that petitioner might have had the opportunity to avoid it by other proof. It was not essential to the validity of the ordinance that the president should expressly approve it. If he failed to return it to the village board, with his objections, within the time provided by the statute, it was no less valid than if he had written his approval upon it; and so if the objection now urged had been specifically made on the trial, the village would have been allowed to prove, if it could, that it was not so returned. In other words, the objection that the ordinance is invalid because not approved cannot be made first in this court.

It is again insisted that the ordinance is invalid because of the objection that it provides for more than one improvement. The most that can be said is, that it authorizes the construction of a main sewer, with branches. There is certainly less reason for saying this is authorizing several improvements than where an ordinance provides for paving two or more streets as one improvement, and ordinances of this latter kind were sustained by this court in *City of Springfield* v. *Green*, 120 Ill. 269, *County of Adams* v. *City of Quincy*, 130 id. 566, and many other cases therein referred to.

Another objection to the validity of the ordinance is, that it fails to provide an outlet for the sewer. But this objection is not supported by the facts. As stated in the ordinance, the mouth of the main sewer, or beginning, is

in a "branch or ravine," and there is no proof whatever tending to show that the outlet thus provided is in any way insufficient. That it does not provide for obtaining the right to open the sewer in the branch or ravine, which is on private property, is immaterial. We said in *Cochran* v. *Village of Park Ridge,* 138 Ill. 295 (at p. 301): "The fact that the village authorities failed to show that they had obtained the right to occupy the highway before the ordinance was passed or before the assessment was made, did not, in our judgment, invalidate the ordinance or the assessment." (See, also, *Maywood Co.* v. *Village of Maywood,* 140 Ill. 216, and cases cited.) *Hutt* v. *City of Chicago,* 132 Ill. 352, has no proper application to the question under consideration, as shown in the *Maywood case,* supra.

. The objection to the validity of the ordinance most strongly insisted upon is, that it is unreasonable and oppressive. It cannot be denied that the sewer provided for in the ordinance is a local improvement, within the meaning of section 1, article 9, chapter 24, of the Revised Statutes. It is admitted this court has frequently sustained special assessments for the construction of sewers, and clearly that could only have been done on the ground that they were local improvements. Being such, authority to make them by special taxation, as well as by special assessment, is expressly given by section 1, *supra.* In *City of Galesburg* v. *Searles,* 114 Ill. 217, it was expressly held that an ordinance providing for the construction of a sewer, to be paid for one-half by general tax and one-half by special tax to be levied on contiguous property, was valid. It is true that ordinance provided that the special tax should be levied in proportion to the benefits accruing to the contiguous property, but it was said (p. 220): "Having determined to raise only one-half the cost of the improvement by special taxation of contiguous property, it was open to the city council to adopt which one of the various modes of special taxation of the property they

saw fit,—whether according to frontage of the property, value, benefits received, or otherwise." That grading or paving a street and the laying of sidewalks are local improvements, to pay for which a special tax may be levied upon contiguous property in proportion to frontage, has been the law of this State since the decision in *White* v. *People ex rel.* 94 Ill. 604. That benefits accruing to property contiguous to a street in which a sewer, like the one contemplated by this ordinance, is laid, differ in kind, and perhaps in degree, from those derived from improving the street itself or laying sidewalks, is admitted, but the benefits are certainly no less local to the adjacent property in the one case than in the other.

But it is said a special tax levied on the lots of land being on the streets in which the sewer is laid, in proportion to frontage, in this case operates unjustly, and is therefore unreasonable. We said in *White* v. *People, supra,* (p. 613): "Whether or not the special tax exceeds the actual benefit to the lot is not material. It may be supposed to be based on a presumed equivalent. The city' council have determined the frontage to be the proper measure of probable benefits. That is generally considered as a very reasonable measure of benefits in the case of such an improvement, and if it does not, in fact, in the present case, represent the actual benefits, it is enough that the city council have deemed it the proper rule to apply." This doctrine has been assailed time and again, but never departed from by this court. It was said in *City of Springfield* v. *Green*, 120 Ill. 269, after citing numerous decisions (p. 273): "If it be possible to settle any question by repeated decisions all the same way, the present one surely ought to be regarded as finally and irrevocably settled." And in the late case of *Chicago and Alton Railroad Co.* v. *City of Joliet*, 153 Ill. 649, it was re-announced, with a citation of numerous later decisions to the same effect.

Counsel seem to understand that the case of *City of Bloomington* v. *Chicago and Alton Railroad Co.* 134 Ill. 451, and *City of Bloomington* v. *Latham,* 142 id. 462, are to the contrary. This is a misconception of those cases. In each of them the ordinance before the court showed upon its face that the property sought to be taxed was not only not benefited by the improvement, but actually damaged thereby. There the question was not whether the tax exceeded the benefits, but whether a special tax could be legally levied at all, it appearing that no benefits whatever could possibly accrue to the property. Here it is not pretended that the property of objectors will not be benefited by the sewer, nor is it claimed that the improvement is not one proper to be made. The sole objection is, that by adopting the system of levying the special tax by frontage, instead of according to benefits to be estimated by commissioners, injustice to property holders has been done, and, as we have seen, that question was not open to consideration in the county court nor is it subject to review here.

We do not think the position that the ordinance is invalid because it does not provide for the levying of a special tax upon the railroad right of way is tenable. The railroad right of way is not, in any proper sense, contiguous to the sewer, which simply passes through it, under ground.

The objection that the commissioners who made the assessment were not properly sworn is without force. The oath which they took, though not, perhaps, technically applicable in the assessment of a special tax, is, we think, in substantial conformity with the statute.

The last ground of reversal is, that the commissioners appointed to levy the special tax did not proceed according to law, but levied such special tax in excess of that fixed by the ordinance and assessment, and in excess of the proper share to be borne by appellants. It is admitted that the assessment roll to which the objection is made

showed a levy of a special tax to the amount of $318.93 in excess of that fixed by the estimating committee, which was approved by the village board. The only attempt on the part of counsel for appellee to answer the objection that to that extent the levy was illegal is the statement: "This makes the total amount against the property $3412. While it is larger than the estimate, we cannot find that this will invalidate the tax." It is not denied that an essential step to proceeding to levy a special tax is the fixing of the amount of the tax, either by the ordinance or by data given by it, by which the commissioners appointed for that purpose can fix the amount to be raised, and it was said in *City of Sterling* v. *Galt*, 117 Ill. 11, "and when so fixed or ascertained, in conformity with the ordinance, it is conclusive upon the property owners." This is clearly so from the various sections of the statute providing for the levy, and, being conclusive upon the property holders, we are unable to see why it is not equally so as against the city or village authorities. If commissioners to levy a special tax can levy $818 more than the estimated amount required, they may levy any other sum in excess of that estimate without invalidating their action. We are unable to find any authority or reason in support of the position that the commissioners appointed by the county court to levy the special tax can ignore the cost of the improvement as fixed by the ordinance and the committee appointed to make the estimate.

Counsel say that the property holder is entitled to recover back any excess levied upon his property not used in the construction of the improvement, and this is certainly true; but that gives no right to the commissioners to levy a tax in excess of the estimated cost. Presumably the estimate is large enough to cover the actual cost, and that alone can be legally levied. Why should a property holder submit to the levy of a sum larger than that which is necessary, because, forsooth,

if the sum so illegally assessed is not used he may get it
back?    Clearly he has a right to insist that he shall
not be compelled to pay more than his proportionate
part of the estimated cost of the improvement, and await
the future determination of the question as to whether it
will be needed or not.   The same section (47) which pro-
vides that if too large a sum is raised the excess shall be
refunded ratably to those by whom it was paid, also pro-
vides that if, in any case, the first assessment proves
insufficient, a second may be made in the same manner,
etc., until sufficient money shall have been realized to
pay for the improvement.   It is too clear for argument
that if the committee appointed to make the estimate
failed to do so correctly, it was the duty of the village
board to refuse to approve the report, as they had pre-
viously done, and refer the matter back to the same or
another committee to make a new estimate.   The com-
missioners appointed by the court to make the levy were
wholly without authority to correct any errors which
they may have discovered, or supposed they had discov-
ered, in what the estimating committee had done.   Their
duty was plain and simple, and extended no further than
to levy the amount furnished them.

We are of the opinion, for the reasons stated, that
this last objection to the assessment roll should have
been sustained, and the assessment re-cast so as to con-
form to the amount fixed by the ordinance and the report
of the estimating committee, and for a failure to sustain
this objection the judgment of the county court must be
reversed and the cause remanded, with directions to pro-
ceed in conformity with the views herein expressed.

*Reversed and remanded.*